# Exhibit B:

# CDC Mask Mandate

The rapidly changing nature of the pandemic requires not only that CDC act swiftly, but also deftly to ensure that its actions are commensurate with the threat. This necessarily involves assessing evolving conditions that inform CDC's determinations.

The conditions that existed on September 4, 2020 have only worsened. As of January 21, 2021, there have been over 24,400,000 cases and over 400,000 deaths. Data collected by Princeton University show that eviction filings are occurring; it is therefore expected that large numbers of evictions would be processed if the Order were to expire. [*https://evictionlab.org/eviction-tracking*]. Without this Order, there is every reason to expect that evictions will increase significantly, resulting in further spread of COVID–19. It is imperative is to act quickly to protect the public health, and it would be impracticable and contrary to the public interest to delay the issuance and effective date of the Order pending notice-and-comment rulemaking.

Similarly, if this Order qualifies as a rule under the APA, the Office of Information and Regulatory Affairs (OIRA) has determined that it would be a major rule under the Congressional Review Act (CRA). But there would not be a delay in its effective date. The agency has determined that for the same reasons, there would be good cause under the CRA to make the requirements herein effective immediately

If any provision of this Order, or the application of any provision to any persons, entities, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any persons, entities, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

This Order shall be enforced by federal authorities and cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18. However, this Order has no effect on the contractual obligations of renters to pay rent and shall not preclude charging or collecting fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract.

*Criminal Penalties*

Under 18 U.S.C. 3559, 3571; 42 U.S.C. 271; and 42 CFR 70.18, a person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death, or a fine of no more than $250,000 if the violation results in a death, or as otherwise provided by law. An organization violating this Order may be subject to a fine of no more than $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death or as otherwise provided by law. The U.S. Department of Justice may initiate criminal proceedings as appropriate seeking imposition of these criminal penalties.

*Notice to Cooperating State and Local Officials*

Under 42 U.S.C. 243, the U.S. Department of Health and Human Services is authorized to cooperate with and aid state and local authorities in the enforcement of their quarantine and other health regulations and to accept state and local assistance in the enforcement of Federal quarantine rules and regulations, including in the enforcement of this Order.

*Notice of Available Federal Resources*

While this Order to prevent eviction is effectuated to protect the public health, the states and units of local government are reminded that the Federal Government has deployed unprecedented resources to address the pandemic, including housing assistance.

The Department of Housing and Urban Development (HUD) has informed CDC that all HUD grantees— states, cities, communities, and nonprofits—who received Emergency Solutions Grants (ESG) or Community Development Block Grant (CDBG) funds under the CARES Act may use these funds to provide temporary rental assistance, homelessness prevention, or other aid to individuals who are experiencing financial hardship because of the pandemic and are at risk of being evicted, consistent with applicable laws, regulations, and guidance.

HUD has further informed CDC that: HUD's grantees and partners play a critical role in prioritizing efforts to support this goal. As grantees decide how to deploy CDBG–CV and ESG–CV funds provided by the CARES Act, all communities should assess what resources have already been allocated to prevent evictions and homelessness through temporary rental assistance and homelessness prevention, particularly to the most vulnerable households.

HUD stands at the ready to support American communities take these steps to reduce the spread of COVID–19 and maintain economic prosperity. Where gaps are identified, grantees should coordinate across available Federal, non-Federal, and philanthropic funds to ensure these critical needs are sufficiently addressed and utilize HUD's technical assistance to design and implement programs to support a coordinated response to eviction prevention needs. For program support, including technical assistance, please visit *www.hudexchange.info/program-support.* For further information on HUD resources, tools, and guidance available to respond to the COVID–19 pandemic, state and local officials are directed to visit *https://www.hud.gov/coronavirus.* These tools include toolkits for Public Housing Authorities and Housing Choice Voucher landlords related to housing stability and eviction prevention, as well as similar guidance for owners and renters in HUD-assisted multifamily properties.

Similarly, the Department of the Treasury has informed CDC that the funds allocated through the Coronavirus Relief Fund and the Emergency Rental Assistance Program may be used to fund rental assistance programs to prevent eviction. Visit *https://home.treasury.gov/policy-issues/cares/state-and-local-governments* for more information about the Coronavirus Relief Fund and *https://home.treasury.gov/policy-issues/cares/emergency-rental-assistance-program* for more information about the Emergency Rental Assistance Program..

*Effective Date*

This Order is effective on January 31, 2021 and will remain in effect, unless extended, modified, or rescinded, through March 31, 2021.

**Authority**

The authority for this Order is Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2.

Dated: January 29, 2021.

**Sherri Berger**

*Acting Chief of Staff, Centers for Disease Control and Prevention.*

[FR Doc. 2021–02243 Filed 1–29–21; 4:15 pm]

**BILLING CODE 4163–18–P**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Centers for Disease Control and Prevention

### Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of Agency Order.

**SUMMARY:** The Centers for Disease Control and Prevention (CDC), a component of the U.S. Department of Health and Human Services (HHS), announces an Agency Order requiring persons to wear masks over the mouth and nose when traveling on any conveyance (*e.g.,* airplanes, trains, subways, buses, taxis, ride-shares, ferries, ships, trolleys, and cable cars) into or within the United States. A person must also wear a mask on any conveyance departing from the United States until the conveyance reaches its foreign destination. Additionally, a person must wear a mask while at any transportation hub within the United States (*e.g.,* airport, bus terminal, marina, train station, seaport or other port, subway station, or any other area that provides transportation within the United States). Furthermore, operators of conveyances and transportation hubs must use best efforts to ensure that persons wear masks as required by this Order.

**DATES:** This Order takes effect at 11:59 p.m. Monday February 1, 2021.

**FOR FURTHER INFORMATION CONTACT:** Jennifer Buigut, Division of Global Migration and Quarantine, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H16–4, Atlanta, GA 30329. Email: *dgmqpolicyoffice@cdc.gov.*

**SUPPLEMENTARY INFORMATION:** The virus that causes COVID–19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Some people without symptoms also spread the virus. In general, the more closely a person interacts with others and the longer that interaction, the higher the risk of COVID–19 spread.

This Order is issued to preserve human life; maintain a safe and operating transportation system; mitigate the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory; and support response efforts to COVID–19 at the Federal, state, local, territorial, and tribal level.

Appropriately worn masks reduce the spread of COVID–19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID–19. Masks are most likely to reduce the spread of COVID–19 when they are widely used by people in public settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID–19 transmission.

This Order will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

A copy of the Order is provided below and a copy of the signed order can be found at *https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html*

**CENTERS FOR DISEASE CONTROL AND PREVENTION**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**ORDER UNDER SECTION 361**

**OF THE PUBLIC HEALTH SERVICE ACT (42 U.S.C. 264)**

**AND 42 CODE OF FEDERAL REGULATIONS 70.2, 71.31(b), 71.32(b)**

**REQUIREMENT FOR PERSONS TO WEAR MASKS**

**WHILE ON CONVEYANCES AND AT TRANSPORTATION HUBS**

*SUMMARY:*

Notice and Order; and subject to the limitations under "Applicability," pursuant to 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b):

(1) Persons[1] must wear[2] masks over the mouth and nose when traveling on conveyances into and within the United States. Persons must also wear masks at transportation hubs as defined in this Order.

(2) A conveyance operator transporting persons into and within the United States[3] must require all persons onboard to wear masks for the duration of travel.

(3) A conveyance operators operating a conveyance arriving at or departing from a U.S. port of entry must require all persons on board to wear masks for the duration of travel as a condition of controlled free pratique.[4]

(4) Conveyance operators must use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking, and for the duration of travel. Best efforts include:

• Boarding only those persons who wear masks;

• instructing persons that Federal law requires wearing a mask on the conveyance and failure to comply constitutes a violation of Federal law;

• monitoring persons onboard the conveyance for anyone who is not wearing a mask and seeking compliance from such persons;

• at the earliest opportunity, disembarking any person who refuses to comply; and

• providing persons with prominent and adequate notice to facilitate awareness and compliance of the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

(5) Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask. Best efforts include:

• Allowing entry only to those persons who wear masks;

• instructing persons that Federal law requires wearing a mask in the transportation hub and failure to comply constitutes a violation of Federal law;

• monitoring persons on the premises of the transportation hub for anyone who is not wearing a mask and seeking compliance from such persons;

• at the earliest opportunity, removing any person who refuses to comply from the premises of the transportation hub; and

• providing persons with prominent and adequate notice to facilitate awareness and compliance with the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or

---

[1] As used in this Order, "persons" includes travelers (*i.e.,* passengers and crew), conveyance operators, and any workers or service providers in the transportation hub.

[2] To "wear a mask" means to wear a mask over the nose and mouth.

[3] This includes international, interstate, or intrastate waterways, subject to the jurisdiction of the United States.

[4] As a condition of this controlled free pratique to commence or continue operations in the United States, conveyance operators must additionally require all persons to wear masks on board conveyances departing from the United States and for the duration of their travel until the conveyance arrives at the foreign destination if at any time any of the persons on the conveyance (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. This precaution must be followed regardless of scheduled itinerary.

email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

DEFINITIONS:

*Controlled free pratique* shall have the same definition as under 42 CFR 71.1, meaning "permission for a carrier to enter a U.S. port, disembark, and begin operation under certain stipulated conditions."

*Conveyance* shall have the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle,[5] vessel . . . or other means of transport, including military." Included in the definition of "conveyance" is the term "carrier" which under 42 CFR 71.1 has the same definition as conveyance under 42 CFR 70.1.

*Conveyance operator* means an individual operating a conveyance and an individual or organization causing or authorizing the operation of a conveyance.

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[6]

*Interstate traffic* shall have the same definition as under 42 CFR 70.1, meaning

"(1):

(i) The movement of any conveyance or the transportation of persons or property, including any portion of such movement or transportation that is entirely within a state or possession—

(ii) From a point of origin in any state or possession to a point of destination in any other state or possession; or

(iii) Between a point of origin and a point of destination in the same state or possession but through any other state, possession, or contiguous foreign country.

(2) Interstate traffic does not include the following:

(i) The movement of any conveyance which is solely for the purpose of unloading persons or property transported from a foreign country or loading persons or property for transportation to a foreign country.

(ii) The movement of any conveyance which is solely for the purpose of effecting its repair, reconstruction, rehabilitation, or storage."

*Intrastate traffic* means the movement of any conveyance or the transportation or movement of persons occurring solely within the boundaries of a state or territory, or on tribal land.

*Possession* shall have the same definition as under 42 CFR 70.1 and 71.1, meaning a "U.S. territory."

*State* shall have the same definition as under 42 CFR 70.1, meaning "any of the 50 states, plus the District of Columbia."

*Territory* shall have the same definition as "U.S. territory" under 42 CFR 70.1 and 71.1, meaning "any territory (also known as possessions) of the United States, including American Samoa, Guam, the [Commonwealth of the] Northern Mariana Islands, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands."

*Transportation hub* means any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States.

*Transportation hub operator* means an individual operating a transportation hub and an individual or organization causing or authorizing the operation of a transportation hub.

*U.S. port* shall have the same definition as under 42 CFR 71.1, meaning any "seaport, airport, or border crossing point under the control of the United States."

STATEMENT OF INTENT:

This Order shall be interpreted and implemented in a manner as to achieve the following objectives:

• Preservation of human life;
• Maintaining a safe and secure operating transportation system;
• Mitigating the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory; and
• Supporting response efforts to COVID–19 at the Federal, state, local, territorial, and tribal levels.

APPLICABILITY:

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe that (1) requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Such requirements must provide the same level of public health protection as—or greater protection than—the requirements listed herein.

In addition, the requirement to wear a mask shall not apply under the following circumstances:

• While eating, drinking, or taking medication, for brief periods;
• While communicating with a person who is hearing impaired when the ability to see the mouth is essential for communication;
• If, on an aircraft, wearing of oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation;
• If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance;[7] or
• When necessary to temporarily remove the mask to verify one's identity such as during Transportation Security Administration screening or when asked to do so by the ticket or gate agent or any law enforcement official.

This Order exempts the following categories of persons:[8]

• A child under the age of 2 years;
• A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 *et seq.*).[9]

---

[5] This includes rideshares meaning arrangements where passengers travel in a privately owned road vehicle driven by its owner in connection with a fee or service.

[6] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N–95 respirators fulfill the requirements of this Order. CDC guidance for attributes of acceptable masks in the context of this Order is available at: *https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.*

[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[8] Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID–19 such as a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19. CDC definitions for SARS-CoV-2 viral test and documentation of recovery are available in the Frequently Asked Questions at: *https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.* Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub. Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask

Continued

- A person for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

This Order exempts the following categories of conveyances, including persons on board such conveyances:

- Private conveyances operated solely for personal, non-commercial use;
- Commercial motor vehicles or trucks as these terms are defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle or truck;
- Conveyances operated or chartered by the U.S. military services provided that such conveyance operators observe Department of Defense precautions to prevent the transmission of COVID–19 that are equivalent to the precautions in this Order.

This Order applies to persons on conveyances and at transportation hubs directly operated by U.S. state, local, territorial, or tribal government authorities, as well as the operators themselves. U.S. state, local, territorial, or tribal government authorities directly operating conveyances and transportation hubs may be subject to additional federal authorities or actions, and are encouraged to implement additional measures enforcing the provisions of this Order regarding persons traveling onboard conveyances and at transportation hubs operated by these government entities.

To the extent permitted by law, and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel),[10] Federal agencies are required to implement additional measures enforcing the provisions of this Order.

BACKGROUND:

There is currently a pandemic of respiratory disease (coronavirus disease 2019 or "COVID–19") caused by a novel coronavirus (SARS–COV–2). As of January 27, 2021, there have been 99,638,507 confirmed cases of COVID–19 globally, resulting in more than 2,141,000 deaths. As of January 27, 2021, there have been over 25,000,000 cases identified in the United States and over 415,000 deaths due to the disease. New SARS–CoV–2 variants have emerged in recent weeks, including at least one with evidence of increased transmissibility.[11]

The virus that causes COVID–19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Infected people without symptoms (asymptomatic) and those in whom symptoms have not yet developed (pre-symptomatic) can also spread the virus. In general, the more closely an infected person interacts with others and the longer those interactions, the higher the risk of COVID–19 spread. COVID–19 may be transmitted by touching surfaces or objects that have the virus on them and then touching one's own or another person's eyes, nose, or mouth.

Masks help prevent people who have COVID–19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others.[12] Masks are primarily intended to reduce the emission of virus-laden droplets, i.e., they act as source control by blocking exhaled virus.[13] This is especially relevant for asymptomatic or pre-symptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions.[14][15] Masks also provide personal protection to the wearer by reducing inhalation of these droplets, i.e., they reduce wearers' exposure through filtration.[16] The community benefit of wearing masks for SARS–CoV–2 control is due to the combination of these effects; individual prevention benefit increases with increasing numbers of people using masks consistently and correctly.

Appropriately worn masks reduce the spread of COVID–19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID–19. Seven studies have confirmed the benefit of universal masking in community level analyses: in a unified hospital system,[17] a German city,[18] a U.S. State,[19] a panel of 15 U.S. States and Washington, DC,[20][21] as well as both Canada [22] and the United States [23] nationally. Each analysis demonstrated that, following directives from organizational and political leadership for universal masking, new infections fell significantly. Two of these studies [24][25] and an additional analysis of data from 200 countries that included localities within the United States [26] also demonstrated reductions in

---

for reasons related to the disability. CDC will issue additional guidance regarding persons who cannot wear a mask under this exemption. *https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html*.

[10] *https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/21/executive-order-promoting-covid-19-safety-in-domestic-and-international-travel/*.

[11] *https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/scientific-brief-emerging-variants.html*.

[12] *https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html*.

[13] Leung NHL, Chu DKW, Shiu EYC, et al. Respiratory virus shedding in exhaled breath and efficacy of face masks. *Nature Medicine.* 2020;26(5):676–680.*https://dx.doi.org/10.1038/s41591-020-0843-2*.

[14] Moghadas SM, Fitzpatrick MC, Sah P, et al. The implications of silent transmission for the control of COVID–19 outbreaks. *Proc Natl Acad Sci U S A.* 2020;117(30):17513–17515.10.1073/pnas.2008373117. *https://www.ncbi.nlm.nih.gov/pubmed/32632012*.

[15] Johansson MA, Quandelacy TM, Kada S, et al. SARS–CoV–2 Transmission From People Without COVID–19 Symptoms. Johansson MA, et al. JAMA Netw Open. 2021 Jan 4;4(1):e2035057. doi: 10.1001/jamanetworkopen.2020.35057.

[16] Ueki H, Furusawa Y, Iwatsuki-Horimoto K, et al. Effectiveness of Face Masks in Preventing Airborne Transmission of SARS–CoV–2. *mSphere.* 2020;5(5).10.1128/mSphere.00637–20. *https://www.ncbi.nlm.nih.gov/pubmed/33087517*.

[17] Wang X, Ferro EG, Zhou G, Hashimoto D, Bhatt DL. Association Between Universal Masking in a Health Care System and SARS–CoV–2 Positivity Among Health Care Workers. *JAMA.* 2020.10.1001/jama.2020.12897. *https://www.ncbi.nlm.nih.gov/pubmed/32663246*.

[18] Mitze T., Kosfeld R., Rode J., Wälde K. *Face Masks Considerably Reduce COVID–19 Cases in Germany: A Synthetic Control Method Approach.* IZA—Institute of Labor Economics (Germany);2020.ISSN: 2365–9793, DP No. 13319. *http://ftp.iza.org/dp13319.pdf*.

[19] Gallaway MS, Rigler J, Robinson S, et al. Trends in COVID–19 Incidence After Implementation of Mitigation Measures—Arizona, January 22-August 7, 2020. *MMWR Morb Mortal Wkly Rep.* 2020;69(40):1460–1463.10.15585/mmwr.mm6940e3. *https://www.ncbi.nlm.nih.gov/pubmed/33031366*.

[20] Lyu W, Wehby GL. Community Use Of Face Masks And COVID–19: Evidence From A Natural Experiment Of State Mandates In The US. *Health Aff (Millwood).* 2020;39(8):1419–1425.10.1377/hlthaff.2020.00818. *https://www.ncbi.nlm.nih.gov/pubmed/32543923*.

[21] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html*. Accessed January 20, 2021.

[22] Karaivanov A., Lu SE, Shigeoka H., Chen C., Pamplona S. *Face Masks, Public Policies and Slowing the Spread of Covid–19: Evidence from Canada* National Bureau of Economic Research 2020. Working Paper 27891. *http://www.nber.org/papers/w27891*.

[23] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid–19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23–62. doi: 10.1016/j.jeconom.2020.09.003. Epub 2020 Oct 17.

[24] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html*. Accessed January 20, 2021.

[25] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid–19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23–62. doi: 10.1016/j.jeconom.2020.09.003. Epub 2020 Oct 17.

[26] Leffler CT, Ing EB, Lykins JD, Hogan MC, McKeown CA, Grzybowski A. Association of country-wide coronavirus mortality with demographics, testing, lockdowns, and public wearing of masks. Am J Trop Med Hyg. 2020 Dec;103(6):2400–2411. doi: 10.4269/ajtmh.20–1015. Epub 2020 Oct 26.

mortality. An economic analysis using U.S. data found that, given these effects, increasing universal masking by 15% could prevent the need for lockdowns and reduce associated losses of up to $1 trillion or about 5% of gross domestic product.[27]

Wearing a mask especially helps protect those at increased risk of severe illness from COVID–19[28] and workers who frequently come into close contact with other people (*e.g.,* at transportation hubs). Masks are most likely to reduce the spread of COVID–19 when they are widely used by people in public settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID–19 transmission.

Traveling on multi-person conveyances increases a person's risk of getting and spreading COVID–19 by bringing persons in close contact with others, often for prolonged periods, and exposing them to frequently touched surfaces. Air travel often requires spending time in security lines and crowded airport terminals. Social distancing may be difficult if not impossible on flights. People may not be able to distance themselves by the recommended 6 feet from individuals seated nearby or those standing in or passing through the aircraft's aisles. Travel by bus, train, vessel, and other conveyances used for international, interstate, or intrastate transportation pose similar challenges.

Intrastate transmission of the virus has led to—and continues to lead to—interstate and international spread of the virus, particularly on public conveyances and in travel hubs, where passengers who may themselves be traveling only within their state or territory commonly interact with others traveling between states or territories or internationally. Some states, territories, Tribes, and local public health authorities have imposed mask-wearing requirements within their jurisdictional boundaries to protect public health.[29]

Any state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID–19 from such state or territory to any other state or territory. That determination is based on, *inter alia,* the rapid and continuing transmission of the virus across all states and territories and across most of the world. Furthermore, given how interconnected most transportation systems are across the nation and the world, local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask and with others who are not wearing masks.

Therefore, I have determined that the mask-wearing requirements in this Order are reasonably necessary to prevent the further introduction, transmission, or spread of COVID–19 into the United States and among the states and territories. Individuals traveling into or departing from the United States, traveling interstate, or traveling entirely intrastate, conveyance operators that transport such individuals, and transportation hub operators that facilitate such transportation, must comply with the mask-wearing requirements set forth in this Order.

America's transportation systems are essential. Not only are they essential for public health, they are also essential for America's economy and other bedrocks of American life. Those transportation systems carry life-saving medical supplies and medical providers into and across the nation to our hospitals, nursing homes, and physicians' offices. Trains, planes, ships, and automobiles bring food and other essentials to our communities and to our homes. Buses bring America's children and teachers to school. Buses, trains, and subways, bring America's workforce to their jobs.

Requiring masks on our transportation systems will protect Americans and provide confidence that we can once again travel safely even during this pandemic. Therefore, requiring masks will help us control this pandemic and aid in re-opening America's economy.

The United States and countries around the world are currently embarking on efforts to vaccinate their populations, starting with healthcare personnel and other essential workers at increased risk of exposure to SARS–CoV–2 and people at increased risk for severe illness from the virus. While vaccines are highly effective at preventing severe or symptomatic COVID–19, at this time there is limited information on how much the available COVID–19 vaccines may reduce transmission in the general population and how long protection lasts.[30] Therefore, this mask requirement, as well as CDC recommendations to prevent spread of COVID–19,[31] additionally apply to vaccinated persons. Similarly, CDC recommends that people who have recovered from COVID–19 continue to take precautions to protect themselves and others, including wearing masks;[32] therefore, this mask requirement also applies to people who have recovered from COVID–19.

*ACTION:*

Until further notice, under 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b), unless excluded or exempted as set forth in this Order, a person must wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States. A person must also wear a mask at any transportation hub that provides transportation within the United States.

Conveyance operators traveling into or within the United States may transport only persons wearing masks and must use best efforts to ensure that masks are worn when embarking, disembarking, and throughout the duration of travel. Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask.

As a condition of receiving controlled free pratique under 42 CFR 71.31(b) to enter a U.S. port, disembark passengers, and begin operations at any U.S. port of entry, conveyances arriving into the United States must require persons to wear masks while boarding, disembarking, and for the duration of travel. Conveyance operators must also require all persons to wear masks while boarding and for the duration of their travel on board conveyances departing from the United States until the conveyance arrives at the foreign destination, if at any time any of the persons onboard (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. These travel conditions are

---

[27] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research* https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html. Accessed January 20, 2021.

[28] *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.*

[29] Based on internet sources, 37 states plus DC and Puerto Rico mandate the wearing of masks in public. Among the jurisdictions that have imposed mask mandates, variations in requirements exist. For example, exemptions for children range in cutoff age from 2 to 12, but masks are generally required in indoor public spaces such as restaurants and stores, on public transit and ride-hailing services, and outdoors when unable to maintain 6 feet of distance from others. *See https://www.aarp.org/health/healthy-living/info-2020/states-mask-mandates-coronavirus.html* (accessed January 28, 2021).

[30] *https://www.cdc.gov/vaccines/covid-19/info-by-product/clinical-considerations.html.*

[31] *https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.*

[32] *https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.*

necessary to mitigate the harm of further introduction of COVID–19 into the United States.

Requiring a properly worn mask is a reasonable and necessary measure to prevent the introduction, transmission and spread of COVID–19 into the United States and among the states and territories under 42 U.S.C. 264(a) and 42 CFR 71.32(b). Among other benefits, masks help prevent dispersal of an infected person's respiratory droplets that carry the virus. That precaution helps prevent droplets from landing in the eye, mouth, or nose or possibly being inhaled into the lungs of an uninfected person, or from landing on a surface or object that an uninfected person may then touch and then touch his or her own or another's eyes, nose, or mouth. Masks also provide some protection to the wearer by helping reduce inhalation of respiratory droplets.

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe, where the controlling governmental authority: (1) Requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Those requirements must provide the same level of public health protection as—or greater protection than—the requirements listed herein.

In accordance with 42 U.S.C. 264(e), state, local, territorial, and tribal authorities may impose additional requirements that provide greater public health protection and are more restrictive than the requirements in this Order. Consistent with other federal, state, or local legal requirements, this Order does not preclude operators of conveyances or transportation hubs from imposing additional requirements, or conditions for carriage, that provide greater public health protection and are more restrictive than the requirements in this Order (*e.g.,* requiring a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19 or imposing requirements for social distancing or other recommended protective measures).

This Order is not a rule within the meaning of the Administrative Procedure Act ("APA") but rather is an emergency action taken under the existing authority of 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), 71.32(b). In the event that a court determines this Order qualifies as a rule under the APA, notice and comment and a delay in effective date are not required because there is good cause to dispense with prior public notice and comment and the opportunity to comment on this Order and the delay in effective date. Considering the public health emergency caused by COVID–19, it would be impracticable and contrary to the public's health, and by extension the public's interest, to delay the issuance and effective date of this Order. Similarly, the Office of Information and Regulatory Affairs has determined that if this Order were a rule, it would be a major rule under the Congressional Review Act, but there would not be a delay in its effective date as the agency has determined that there would be good cause to make the requirements herein effective immediately under the APA.

This order is also an economically significant regulatory action under Executive Order 12866 and has therefore been reviewed by the Office of Information and Regulatory Affairs of the Office of Management and Budget. The agency is proceeding without the complete analysis required by Executive Order 12866 under the emergency provisions of 6(a)(3)(D) of that Order.

If any provision of this Order, or the application of any provision to any carriers, conveyances, persons, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any carriers, conveyances, persons, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

To address the COVID–19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities including the provisions of 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR part 1503, 1540.105, 1542.303, 1544.305 and 1546.105.

This Order shall be further enforced by other federal authorities and may be enforced by cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18 and 71.2.[33]

*EFFECTIVE DATE:*

This Order shall enter into effect on February 1, 2021, at 11:59 p.m. and will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

Dated: February 1, 2021.

**Sherri Berger,**

*Acting Chief of Staff, Centers for Disease Control and Prevention.*

[FR Doc. 2021–02340 Filed 2–1–21; 4:15 pm]

**BILLING CODE 4163–18–P**

---

[33] While this Order may be enforced and CDC reserves the right to enforce through criminal penalties, CDC does not intend to rely primarily on these criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance as well as support from other federal agencies in implementing additional civil measures enforcing the provisions of this Order, to the extent permitted by law and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel).

---

# DEPARTMENT OF THE INTERIOR

## Geological Survey

[GX20EG31DW50100; OMB Control Number 1028-New]

### Agency Information Collection Activities; Hydrography Addressing tool

**AGENCY:** U.S. Geological Survey, Interior.

**ACTION:** Notice of Information Collection; request for comment.

---

**SUMMARY:** In accordance with the Paperwork Reduction Act of 1995, we, the U.S. Geological Survey (USGS) are proposing a new information collection.

**DATES:** Interested persons are invited to submit comments on or before April 5, 2021.

**ADDRESSES:** Send your comments on this information collection request (ICR) by mail to U.S. Geological Survey, Information Collections Officer, 12201 Sunrise Valley Drive MS 159, Reston, VA 20192; or by email to *gs-info_collections@usgs.gov.* Please reference OMB Control Number 1028–xxxx in the subject line of your comments.

**FOR FURTHER INFORMATION CONTACT:** To request additional information about this ICR, contact Michael Tinker by email at *mdtinker@usgs.gov* or by telephone at 303–202–4476.

**SUPPLEMENTARY INFORMATION:** In accordance with the Paperwork Reduction Act of 1995, we provide the general public and other Federal agencies with an opportunity to comment on new, proposed, revised, and continuing collections of information. This helps us assess the impact of our information collection requirements and minimize the public's reporting burden. It also helps the public understand our information collection requirements and provide the requested data in the desired format.

We are soliciting comments on the proposed ICR that is described below.