UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTH FREEDOM DEFENSE
FUND, INC., ANA CAROLINA
DAZA, and SARAH POPE,

    Plaintiffs,

v.                                                          Case No: 8:21-cv-1693-KKM-AEP

JOSEPH R. BIDEN, Jr., in his official
capacity as President of the United States,
XAVIER BECERRA, in his official capacity
as Secretary of Health and Human Services,
THE DEPARTMENT OF HEALTH AND
HUMAN SERVICES, THE CENTERS FOR
DISEASE CONTROL AND PREVENTION,
ROCHELLE P. WALENSKY, in her official
capacity as Director of the CDC, MARTIN S.
CETRON, in his official capacity as Director of
the CDC's Division of Global Migration and
Quarantine, and THE UNITED STATES OF
AMERICA,

    Defendants.
_____

## ORDER

Plaintiffs Sarah Pope, Ana Daza, and Health Freedom Defense Fund (HFDF) filed this action in the Tampa Division of the Middle District of Florida, seeking a declaratory judgment that Executive Order 13998 and the Centers for Disease Control's (CDC) travel

mask mandate are unlawful. (Doc. 1.) Defendants move to transfer this action to the Honorable Paul G. Byron in the Orlando Division of the Middle District of Florida because of an ostensibly similar case pending before him. (Doc. 19.) After a thorough review, this Court denies the motion. The actions are not sufficiently similar—either in kind or procedural posture—as to create "the probability of inefficiency or inconsistency." Local Rule 1.07(a)(2)(B). The convenience of the parties and Plaintiffs' choice of forum likewise point in favor of retaining the action in this Division. Finally, Defendants' fear of warring nationwide injunctions is ill-founded, as Plaintiffs have not sought one here.

I.  BACKGROUND

In response to the COVID-19 pandemic, President Biden issued Executive Order 13998, which directed federal agencies to require that passengers wear masks on all forms of public transportation. *See* Exec. Order No. 13998, 86 Fed. Reg. 7205 (Jan. 21, 2021). Following that order, the CDC promulgated an "emergency action" requiring all persons, with limited exceptions, wear a mask covering "the mouth and nose when traveling on any conveyance" or while inside any transportation hub within the United States. *See* Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs, 86 Fed. Reg. 8025, 8025–30 (Feb. 3, 2021).

Plaintiffs Ana Daza and Sarah Pope are residents of counties within the Tampa Division of the Middle District. (Doc. 1 ¶¶ 9–10.) Both flew routinely before the

pandemic. (*Id.* ¶¶ 49–50.) Daza, who regularly visits family in Columbia, has not flown since the CDC's mask mandate came into effect. (*Id.* ¶ 49.) She objects to wearing a mask because it gives her anxiety, headaches, and shortness of breath. (*Id.*) Though a physician has diagnosed her with anxiety, she alleges she is not qualified for an exception to the mask mandate. (*Id.*) Similarly, the mask mandate has deterred Pope from taking long flights because of her concern that wearing a mask for extended periods will give her anxiety or cause her to have a panic attack. (*Id.* ¶ 50.) Joining with HFDF, a non-profit entity with members "in the Middle District of Florida, Tampa Division," (*id.* ¶¶ 47–48), Pope and Daza sued the Defendants on July 12, 2021, seeking a declaratory judgment that the mask mandate and Executive Order 13998 are invalid, (*id.* ¶ 1; Doc. 26 at 4).

The Complaint alleges that the mask mandate violates the Administrative Procedure Act because it exceeds the CDC's statutory authority (Count I), did not provide for notice and comment (Count II), and is arbitrary and capricious (Count III). The Complaint also alleges that—if the mask mandate is within the CDC's congressionally granted powers—Congress unconstitutionally delegated its legislative power (Count IV). Finally, the Complaint asserts that Executive Order 13998 is an unconstitutional exercise of legislative power (Count V) and that it "violates the Separation of Powers between the States and the Federal Government" (Count VI).

3

Pope, Daza, and HFDF are not the only ones (or the first) to challenge the mask mandate or Executive Order 13998. On June 7, 2021, Lucas Wall filed a pro se complaint in the Orlando Division of the Middle District. *See Wall v. CDC*, No. 6:21-cv-0975-PGB-DCI (M.D. Fla.) (Byron, J.). The case was randomly assigned to the Honorable Paul G. Byron. Wall's complaint stretches over 200 pages and contains 23 counts. Like the Complaint here, Wall's complaint asserts that the mask mandate violates the APA, exceeds the CDC's statutory authority, or is the product of an unconstitutional delegation of legislative power. Wall also argues that Executive Order 13998 is invalid because it violates the separation of powers. Additionally, Wall asserts many other claims and names other defendants that are not part of this action.

After this Court granted an extension, Defendants in this action answered the Complaint, (Doc. 20), and now move to transfer to the Orlando Division for adjudication by Judge Byron, (Doc. 19). Plaintiffs oppose a transfer. (Doc. 26.)

## II. LEGAL STANDARD and ANALYSIS

Citing the potential for inconsistency or inefficiency from adjudication in different Divisions and by different judges, Defendants ask this Court to transfer to the Orlando Division under Local Rule 1.07(a), and, in the alternative, under 28 U.S.C. § 1404(b).

## A. Intra-District Transfer under Local Rule 1.07(a)

Local Rule 1.07(a) provides that, if "actions before different judges present the probability of inefficiency or inconsistency, a party *may* move to transfer a later-filed action to the judge assigned to the first-filed action." Local Rule 1.07(a)(2)(B) (emphasis added). As the plain text instructs, a motion to transfer is discretionary from start to finish. The party need not move to transfer simply because his later-filed case satisfies the threshold standard of "probability of inefficiency or inconsistency." And nothing in Rule 1.07(a)(2)(B) mandates that a judge in the later-filed action grant a party's request to transfer, even if the party satisfies that threshold standard to seek a transfer. The decision to transfer thus resides with the judge in the later-filed action, but she can only transfer "with the consent of the transferee judge." *Id.* Aside from the consent requirement, the transfer decision remains purely discretionary. *See Daniels v. Gov't Emps. Ins. Co.*, No. 8:19-cv-2612, 2020 WL 6599420, at *2 (M.D. Fla. Jan. 15, 2020) (Scriven, J.) ("The determination of the issue, however, is vested in the sound discretion in the Court.")[1]; Local Rule 1.07(a)(2)(A) (noting that a presiding judge may transfer "at any time and for any reason"); *see also United States v. Musselwhite*, 709 F. App'x 958, 967 (11th Cir. 2017) (explaining that the Local Rules on transfer "must be read in conjunction"). In exercising

---

[1] The Middle District of Florida adopted new Local Rules on February 1, 2021. Because the new Local Rules are substantially similar to the prior rules governing transfer, this Court draws on cases decided prior to February 1, 2021.

5

this discretion, courts within the Middle District consider a plaintiff's opposition to the transfer, the convenience of the parties, efficiency, and the interests of justice. *See Petro Gate, Inc. v. Circle K Stores, Inc.*, No. 2:20-cv-246, 2020 WL 10458523, at *1 (M.D. Fla. Apr. 27, 2020) (Honeywell, J.).

Defendants assert that this action raises the same legal challenges against the same agency action as *Wall*. Thus, absent transfer, Defendants contend there is a probability of inefficient expenditure of judicial resources or inconsistent judgments. (Doc. 19.) Plaintiffs disagree and cite numerous differences both in substance and procedural posture between the two actions. (Doc. 26 at 2.) Plaintiffs also contend that their choice of forum and convenience weigh against a transfer. (*Id.* at 10–13.) This Court agrees that the two actions are not as similar as they might first appear, and that transfer is not warranted.

### 1. Significant Dissimilarities Weigh in Favor of Retaining the Action in this Division

Despite some similarities, the actions are not sufficiently related to warrant transfer. As the parties acknowledge, *Wall* contains several of the same legal claims as in this action. Both actions challenge the CDC's mask mandate, (Doc. 19 at 4), alleging that it violates the APA's notice-and-comment requirements or is arbitrary and capricious, (*id.* at 5). They both make similar arguments that the mask mandate exceeds the CDC's statutory authority or is an unconstitutional delegation of legislative power. (*Id.*) Both cases also argue that Executive Order 13998 is unlawful. (*Id.*)

6

But the similarities end there. As Defendants admit, "Mr. Wall also brings several additional claims (and names several additional defendants) that do not appear in this case." (Doc. 19 at 6.) Wall's complaint names the Greater Orlando Aviation Authority, the Central Florida Regional Transportation Authority, and the federal Transportation Security Administration as defendants, (Doc. 26 at 5), none of which appear in this action. *See Parkervision, Inc. v. Qualcomm Inc.*, No. 6:14-cv-687, 2015 WL 12852308, at *2 (M.D. Fla. Mar. 9, 2015) (Byron, J.) (denying intra-district transfer after finding the cases "distinguishable" because of "the inclusion of several additional defendants").

Not only does Wall sue additional defendants, he also brings additional claims. Wall's complaint contains 23 counts. (Doc. 26 at 5.) Among these counts, Wall asserts violations of the Fifth Amendment, Tenth Amendment,[2] the constitutional right to travel, Florida law, as well as a violation of the Air Carrier Access Act.[3] (Doc. 26 at 9.) These claims are not present in this action. Middle District courts applying the intra-district transfer rule have found differing claims—even when the defendants are almost identical— a sufficient reason to deny transfer. *See, e.g., Daniels*, 2020 WL 6599420, at *1–2 (finding two actions not sufficiently related, despite requesting the same relief against mostly the

---

[2] Wall alleges that enforcement of the mask mandate violates the Tenth Amendment because it conflicts with the laws of various States, while Plaintiffs here allege that Executive Order 13998 violates the separation of powers, citing the Tenth Amendment as support. (Doc. 1 ¶¶ 89–92.)

[3] Wall's complaint also asserts that the mask mandate violates the Regulatory Flexibility Act. The complaint further alleges that agency enforcement of the mask mandate through fines violates the congressional power of the purse. The parties have since agreed to dismiss these counts.

same defendants, because one case "address[ed] only a subset of the claims asserted in [the other]"); *Parkervision*, 2015 WL 12852308, at *2 (denying a motion for an intra-district transfer, despite potential for some "duplication of effort," because some claims and defendants were not common to both actions).

Nor is the relief identical. Wall's complaint requests a permanent injunction and Wall has moved for a temporary restraining order and a preliminary injunction. In contrast, the Plaintiffs here have clarified that they are not seeking an injunction. (Doc. 26 at 10.) Instead, they are asking for a declaratory judgment. (Doc. 1; Doc. 26 at 4.)

In sum, a review of the defendants, claims, and relief shows meaningful differences between these actions. These differences decrease the probability of conflicting decisions and limit the efficiency gains from a transfer.

But these are not the only significant differences. The two actions are also factually distinct. *See Arbit v. Makrides*, No. 8:11-cv-2020, 2011 WL 13143910, at *1 (M.D. Fla. Nov. 3, 2011) (Moody, J.) (denying transfer after finding the common questions of fact "superficial"). Wall filed his complaint *after* he was denied entry and boarding at an airport because he refused to wear a mask. Wall alleges that he was denied entry despite filing for an exemption from the mask mandate based on a medical disability and his vaccination status. Wall also alleges that he was denied boarding on a city bus operated by the Central Florida Transportation Authority for his refusal to wear a mask. In contrast, the individual

8

Plaintiffs in this action have not attempted to violate the mask mandate. (Doc. 1 ¶¶ 47–52.) Nor do they claim that they applied for and were denied an exemption from the mandate. And they do not ground their objections to the agency action in their vaccination status. Instead, they assert that the mask mandate has prevented them from traveling because they anticipate harmful effects from extended mask-wearing. (*Id.* ¶¶ 49–50.) While the actions may challenge the same agency action, these key factual differences may lead to differing discovery, legal argument and analysis, and may require resolution on different grounds. *See Mariani v. Nocco*, No. 8:20-cv-2998, 2021 WL 3172920, at *1–2 (M.D. Fla. July 27, 2021) (Honeywell, J.) (denying an intra-district transfer because "the specific facts giving rise to [plaintiff's] case [were] not duplicative of the facts giving rise to the other cases," despite allegations that the plaintiffs in the two actions were both victims of common defendants' fraudulent scheme).

In turn, the dissimilar factual background may produce dissimilar legal arguments. For example, Wall and the Plaintiffs in this action may face different standing and injury-in-fact challenges. So too, Wall's attention to vaccines may take that action down a different path than this one. Wall's complaint argues, in part, that the mask mandate is arbitrary and capricious because it does not consider the efficacy of vaccines at containing the spread of COVID-19. Similarly, Wall may argue that he should have been granted an exemption from the mask mandate because he is fully vaccinated. Whatever form his

9

arguments take, vaccine status will likely rank high in his presentation. By Plaintiffs' count, Wall mentions variations of the word "vaccine" 180 times in his complaint alone. (Doc. 26 at 6.) Plaintiffs' Complaint in this action does not mention vaccination at all. (Doc. 1; Doc. 26 at 6.)

The two actions are also at different procedural stages of litigation. Wall filed his complaint on June 7, 2021. Since that time, Wall moved for a temporary restraining order, a preliminary injunction, and summary judgment. Wall has moved for reconsideration of two orders, to vacate two others, and for expedited briefing on summary judgment. He has filed a motion to disqualify the Magistrate Judge and for a certificate of appealability. Wall has filed nigh innumerable notices of supplemental authority, as well as a notice of interlocutory appeal. The Eleventh Circuit has twice addressed Wall's case, and the Supreme Court has already denied an emergency application arising from Wall's case.

As things presently stand in *Wall*, there are two motions to dismiss and one motion for summary judgment pending. The Magistrate Judge has entered a report and recommendation submitting that some of Wall's claims should be dismissed with prejudice and all others should be dismissed without prejudice. If the report is adopted, Wall must file an amended complaint if he wishes to continue prosecuting the action. If he does so, he will likely have the opportunity to add and subtract claims and defendants. So too, the

10

Defendants may again move to dismiss. In the meantime, the Magistrate Judge has stayed discovery, despite Wall's requests for extra-record evidence.

In contrast to the flurry of activity in *Wall* is the relative tranquility of this action. Plaintiffs filed their complaint on July 12, 2021. (Doc. 1.) Defendants filed a motion to transfer on October 13, 2021. (Doc. 19.) Unlike in *Wall*, Defendants have filed an answer. (Doc. 20.) And neither party is seeking discovery beyond the administrative record. (Doc. 27.) Thus, once the motion to transfer is resolved, this action will be ready to proceed to summary judgment. According to this Court's scheduling order, Defendants are due to file their motion for summary judgment on December 22, 2021, Plaintiffs' response and cross-motion for summary judgment is due January 24, 2022, and the motions will be ripe on March 11, 2022. (Doc. 28.) These clear scheduling expectations contrast with the situation in *Wall*. In the light of the Magistrate Judge's pending recommendation that all Wall's claims be dismissed with or without prejudice, it is not apparent when—or if—Wall's complaint—whatever its final contents—will proceed past the pleading phase to the merits.

Given these differences, this Court is not convinced that significant economies of effort will result from a transfer. *See Arbit*, 2011 WL 13143910, at *1–2 (denying intra-district transfer because it "would not promote efficiency" in cases with differing procedural postures and expected schedules); *Myers v. Provident Life & Accident Ins. Co.*, No. 8:19-cv-724, 2019 WL 5725179, at *2 (M.D. Fla. June 14, 2019) (Honeywell, J.) (reasoning

that differing procedural postures made "it unlikely that transfer would conserve judicial labor and resources" and denying transfer as "inappropriate"); *Mariani*, 2021 WL 3172920, at *2 (denying intra-district transfer after concluding that defendants had failed to show a transfer was "needed for purposes of efficiency or consistency").

2. **The Intra-district Transfer Factors Weigh in Favor of Retaining the Action in this Division**

In addition to the significant differences between the two cases highlighted above, other relevant considerations militate against transfer. *See Petro Gate*, 2020 WL 10458523, at *1 (considering a plaintiff's opposition to the intra-district transfer, the convenience of the parties, efficiency, and the interests of justice as part of the intra-district transfer inquiry).

Courts ordinarily accord deference to a plaintiff's choice of forum in deciding whether to grant a defendant's motion to transfer. *See Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1266 (S.D. Fla. 2013) (Marra, J.) (addressing motion to transfer from the Southern District to the Middle District of Florida); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." (quotation omitted)). Defendants assert that Plaintiffs' choice of forum is not entitled to deference because HFDF is a Wyoming corporation, and thus it has not chosen its home forum. (Doc. 19 at 10.) But the Complaint alleges that "the Individual Plaintiffs and

12

declarants in support of Plaintiff HFDF all reside within the Middle District and within this Division." (Doc. 1 ¶ 20.) The Complaint further specifies that Pope and Daza reside in Hillsborough and Pinellas Counties, which are within the Tampa Division. (*Id.* ¶¶ 9–10.) Accordingly, Plaintiffs have chosen the home forum and oppose a transfer. Thus, Plaintiff's choice of forum weighs against transfer. *See Petro Gate, Inc.*, 2020 WL 10458523, at *1 (giving weight to plaintiff's lack of opposition to an intra-district transfer).

So too, the convenience of the parties weighs against transfer. As Defendants accede, transfer to the Orlando Division will burden—if only by a few hours of driving time—the individual Plaintiffs in this action. (Doc. 19 at 10.) That burden might be slight, but Defendants allege no countervailing burden on them if the action remains in this Division. To be sure, Defendants' counsel must commute to Florida from the Washington, D.C., area regardless and raise no concern that Tampa creates a higher burden on them compared to Orlando. Accordingly, this factor weighs in favor of denying transfer.

Defendants argue that the risk of conflicting nationwide injunctions would be a burden, (Doc. 19 at 8–9), but—as mentioned above—Plaintiffs in this action are not seeking an injunction. So this fear is misplaced. But more fundamentally, this Court rejects the premise of Defendants' argument. Defendants' core contention is that—for the sake of efficiency and uniformity—it is preferable to transfer cases seeking nationwide relief against

13

the federal government to one district judge who alone decides whether an Executive policy stands or falls. (*Id.*) This Court disagrees.

Assuming district judges legitimately wield the immense power of enjoining government action against all persons everywhere,[4] is it better for a judge to exercise that power without the benefit of other jurists' considered conclusions on that issue? Hardly. Practically, a district judge's power to render the Executive's policies universally inoperable is magnified through transfer and consolidation; it is challenged and sharpened by differing rulings from other district judges. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2425, (2018) (Thomas, J., concurring) (explaining that nationwide injunctions "prevent[] legal questions

---

[4] Article III vests federal courts with the "judicial Power" to decide "Cases" and "Controversies." Despite the recent exponential increase in district court remedies that purport to bind parties not before the court, this Court suspects that "universal injunctions are legally and historically dubious." *Trump v. Hawaii*, 138 S. Ct. 2392, 2429 (2018) (Thomas, J., concurring). At a minimum, "the routine issuance of universal injunctions is patently unworkable." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). But the heady questions posed by their continued use and growth are yet to be resolved, and the debate about their propriety rages across the Circuit Courts and even amongst the Justices. *See, e.g.*, *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2412 n.28 (2020) (Ginsburg, J., dissenting) (noting that "the District Court did not abuse its discretion in issuing a nationwide injunction" because the "[APA] contemplates nationwide relief from invalid agency action" (citing 5 U.S.C. § 706(2))); *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1407–10 (D.C. Cir. 1998) (invalidating an agency rule and affirming a nationwide injunction); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 88 (2d Cir. 2020), *cert. granted*, 141 S. Ct. 1370 (2021) (limiting a nationwide injunction to New York state while noting that the court had "no doubts that the law, as it stands today, permits district courts to enter nationwide injunctions");*Texas v. United States*, 809 F.3d 134, 187–88 (5th Cir. 2015), aff'd by an equally divided court, 136 S. Ct. 2271 (2016) ("It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction."); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (stating disapproval of nationwide injunctions and narrowing the relief "to redress only the injury shown as to the plaintiff states"). Until the Eleventh Circuit or the Supreme Court say differently, the scope of injunctive relief that this Court may order will remain "an exercise of discretion and judgment." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (narrowing the scope of a universal injunction to individuals similarly situated to plaintiffs).

from percolating through the federal courts, encourag[e] forum shopping, and mak[e] every case a national emergency for the courts and for the Executive Branch").

One might contend that robust disagreement by lower court jurists is a feature, not a bug, of our system. Article III contemplated a pyramid and hierarchical shape of the federal judiciary, which "encourages multiple judges and multiple circuits to weigh in," thus "permit[ting] the airing of competing views that aids" appellate review. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). Transferring and consolidating cases—particularly ones challenging major Executive branch actions—before a smaller pool of district judges hinders this process while swelling the influence those judges wield.[5]

On the other hand, differing assessments of the legality of government acts coupled with reasoned opinions create a healthy legal debate that benefits the federal judiciary. That principle applies here. Ordinarily, transfer and consolidation of similar cases with the same parties (for example, civil rights cases alleging the same violation against the same state actor by similarly situated plaintiffs) produce efficiency and consistency. Yet those benefits

---

[5] Defendants cite three example cases. *See Dep't of Homeland Sec. v. Regents of Univ. Cal.*, 140 S. Ct. 1891 (2020) (challenges to the recission of DACA); *Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019) (challenges to the inclusion of the citizenship question on the census questionnaire); *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020) (challenges to DHS's public-charge rule). Defendants point out that, in those matters, numerous legal challenges were transferred to and consolidated under a small number of district judges. These judges were tasked with adjudicating the legal viability of highly debated policy objectives of the Executive branch. Ultimately, these examples have little bearing here, where only two cases throughout the Country challenge this CDC mandate that has been in effect since February 1, 2021.

diminish in actions challenging a unified Executive branch action that will often involve novel, complex legal issues and raise hotly contested political questions. Instead, consolidation of those kinds of cases highlights the problematic features of nationwide injunctions. *See* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 457–464 (2017) (reasoning that universal injunctions are inconsistent with other doctrines, promote forum shopping, and impair judicial decisionmaking). The better approach—and one arguably more consistent with Article III—is narrowly crafted equitable relief remedying only the harms of the parties before the district court, allowing for potentially divergent adjudications that promote judicial dialog. *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 88 (2d Cir. 2020), *cert. granted*, 141 S. Ct. 1370 (2021) ("encourag[ing] district courts to consider crafting preliminary injunctions that anticipate the possibility of conflict with other courts and provide for such a contingency"). Thus, Defendants' concern over competing nationwide injunctions are factually misplaced here and theoretically unpersuasive in the abstract, particularly if district courts take a modest approach to crafting equitable relief. *See id.* (suggesting that district courts fashion injunctions with "limiting language providing that the injunction would not supersede contrary rulings of other courts, an invitation to the parties to return and request modification as the situation changes, or the limitation of the

16

injunction to the situation of particular plaintiffs or to similarly situated persons within the geographic jurisdiction of the court").

Finally, judicial convenience weighs in favor of retaining the action in this Division. As discussed above, this action is not a carbon copy of *Wall*. Instead, there are different parties, claims, and requested relief. More importantly, the cases arise from different factual scenarios that will likely provoke different obstacles to relief and require different legal strategies. And transfer with the goal of consolidation would prejudice Plaintiffs if ultimately allowed, as Plaintiffs should not be unfairly tied to litigating their claims with Wall, who proceeds pro se and raises quite divergent allegations. All told, these differences minimize the potential for duplicative labor if the cases remain before the respective jurists. *See Myers*, 2019 WL 5725179, at *2 ("The determination of which actions promote judicial economy is within the Court's discretion[.]" (alteration in original) (quotation omitted)). Of course, that is not to say that the actions share no similarities; a not-insubstantial portion of the legal framework may be similar. But that is only true if *Wall* passes the pleading stage and reaches a merits determination. Even if it does, it may not be soon since Wall may be required to replead or he may succeed in reopening discovery to include extra-record evidence. And it is impossible to say what similarity an amended complaint may bear to the claims in this action.

### 3. The Transferee Judge Does Not Consent to Transfer

Regardless of the above analysis, Defendants face an absolute bar to transfer under the Local Rule: Judge Byron declines to accept a transfer, as he agrees that the cases' dissimilarities counsel against transfer. Thus, transfer cannot be granted under Local Rule 1.07(a)(1)(B).[6]

Because the risk of inconsistency or inefficiency is minimal, the convenience of the parties and Plaintiffs' choice of forum point in favor of retaining the action in this Division, and Judge Byron declines to accept transfer, the Court denies Defendants' motion to transfer under Local Rule 1.07(a)(1)(B).

### B. Intra-District Transfer under 28 U.S.C. § 1404(b)

In the alternative and "[o]ut of an abundance of caution," Defendants also move to transfer to the Orlando Division under 28 U.S.C. § 1404(b). (Doc. 19 at 9.) That section provides that "any action . . . may be transferred, in the discretion of the court, from the division in which [it is] pending to any other division in the same district." 28 U.S.C. § 1404(b). In exercising their discretion under § 1404(b), courts consider similar factors as those analyzed under § 1404(a). *See AGSouth Genetics LLC v. Terrell Peanut Co.*, No. 3:09-cv-93, 2009 WL 4893588, at *2 (M.D. Ga. Dec. 9, 2009) (reasoning that the analysis

---

[6] Defendants have not requested this Court consider Local Rule 1.07(a)(1)(C), which allows the judge in the later-filed action to petition the Chief Judge of the Middle District to order a transfer over the transferee judge's objection. This Court would not employ that mechanism even if Defendants sought it, as transfer is not necessary.

18

is the same under § 1404(a) and § 1404(b)). Accordingly, courts consider the plaintiff's choice of forum, the convenience of the parties and witnesses, and the interests of justice. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–31 (1988); *AGSouth Genetics LLC*, 2009 WL 4893588, at *2 (reasoning that, even for intra-district transfers, a plaintiff's choice of forum is entitled to "considerable deference").

For identical reasons to those expressed above, this Court denies Defendants' motion to transfer to the Orlando Division under § 1404(b). First, given the differences between this action and *Wall*, this Court is not convinced that efficiency will accrue from a transfer. *Cf. In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (explaining that, under § 1404(a), the movant has the burden of establishing "that the suggested forum is more convenient"). Second, Plaintiffs' choice of forum and the convenience of the parties weighs in favor of retaining the action in this District. *See Brown v. Ramsay*, No. 18-cv-10279, 2019 WL 8128928, at *1 (S.D. Fla. Aug. 26, 2019) (Torres, J.) (giving deference to plaintiff's choice of forum for intra-district transfers according to the extent of plaintiff's connection to the forum). Finally, upon resolution of this motion, this action is ready to go forward in this Division. A transfer only raises the possibility of prejudice from delay. *See* Fed. R. Civ. P. 1 (instructing courts give attention to the "just, speedy, and inexpensive determination of every action"). Accordingly, this Court denies Defendants' motion to transfer under § 1404(b).

19

## III.   CONCLUSION

For the reasons stated above, this Court denies Defendants' motion to transfer to the Orlando Division of the Middle District of Florida. Defendants have not convinced this Court that there is a reasonable probability of inconsistency or inefficiency from retaining this action or that transfer would minimize those risks. Accordingly, the Defendants' (Doc. 19) motion to transfer is **DENIED**.

**ORDERED** in Tampa, Florida, on November 19, 2021.

Kathryn Kimball Mizelle
United States District Judge