# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HEALTH FREEDOM DEFENSE
FUND, INC.; ANA CAROLINA
DAZA; and SARAH POPE,

        Plaintiffs,

    v.

JOSEPH R. BIDEN, JR., in his official
capacity as President of the United
States; XAVIER BECERRA, in his
official capacity as Secretary of Health
and Human Services; THE
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; THE
CENTERS FOR DISEASE
CONTROL AND PREVENTION;
ROCHELLE P. WALENSKY, MD,
MPH, in her official capacity as
Director of the CDC; MARTIN S.
CETRON, MD, in his official capacity
as Director of the CDC's Division of
Global Migration and Quarantine; and
THE UNITED STATES OF
AMERICA,

        Defendants.

Case No. 8:21-cv-1693-KKM-AEP

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, AND RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION.......................................................................................1

ARGUMENT ..........................................................................................1

I.     The Transportation Mask Order Falls Comfortably Within CDC's Statutory Authority...................................................................................1

     A.    The Transportation Mask Order Is a "Sanitation" Measure (or an "Other" Like Measure) Authorized by the Plain Text of § 264(a) ........2

     B.    There Is No Warrant to Give § 264(a) an Atextually Narrow Reading. ...................................................................................6

     C.    Defendants' Interpretation Is, at a Minimum, a Reasonable One Entitled to *Chevron* Deference. ........................................................8

II.    The Transportation Mask Order Is Procedurally Proper...........................12

III.   The Transportation Mask Order Is Not "Arbitrary Or Capricious."............14

     A.    The Order Satisfied 42 C.F.R. § 70.2 ............................................14

     B.    The Transportation Mask Order Is Reasonable and Reasonably Explained.................................................................................15

          1.    CDC Rationally Concluded That the Mask Order Would Help Limit the Spread of COVID-19. ..................................15

          2.    CDC's Weighing of Scientific Evidence Was Appropriate........17

          3.    CDC Considered, and Accommodated, Health Concerns Related to Mask-Wearing. .................................................18

          4.    CDC Was Not Under an Obligation to Provide "Metrics.".....19

IV.   Plaintiffs' Non-Delegation Doctrine Claim Is Meritless. ..........................19

V.    Plaintiffs Are Limited to a Declaratory Judgment, at Most........................20

CONCLUSION........................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Air Transp. Ass'n of Am. v. Civil Aeronautics Bd.*,
    732 F.2d 219 (D.C. Cir. 1984) .................................................................. 14

*Ala. Hosp. Ass'n v. Beasley*,
    702 F.2d 955 (11th Cir. 1983) .................................................................. 13

*Alabama Association of Realtors v. Dept. of Health and Human Services*
    141 S. Ct. 2485 (2021) ....................................................................*passim*

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
    38 F. Supp. 2d 114 (D.D.C. 1999) ....................................................... 13-14

*Barnhart v. Walton*,
    535 U.S. 212 (2002) ................................................................................ 11

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) .............................................................................. 13

*Big Time Vapes, Inc. v. FDA*,
    963 F.3d 436 (5th Cir. 2020) .............................................................. 19-20

*Branch-Noto v. Sisolak*,
    — F. Supp. 3d —, No. 2:21-cv-01507,
    2021 WL 6064795 (D. Nev. Dec. 22, 2021) .................................................9

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ............................................................................. 2, 8

*Cruz ex rel. L.C. v. Pritzker*,
    No. 21-cv-5311, 2021 WL 5906059 (N.D. Ill. Dec. 14, 2021)............................9

*Dep't of Homeland Sec'y v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ....................................................................... 16, 19

*Doe v. Franklin Square Union Free Sch. Dist.*,
    —F. Supp. 3d —, No. 2:21-cv-5012,
    2021 WL 4957893 (E.D.N.Y. Oct. 26, 2021) ...............................................9

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018) ..............................................................................6

*Florida v. Becerra*,
    544 F. Supp. 3d 1241 (M.D. Fla. 2021),
    *appeal dismissed as moot*, No. 21-12243 (11th Cir. Jan. 19, 2022).................. 13, 15

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) .............................................................................. 20

*Huffman v. Comm'r of Internal Revenue*,
    978 F.2d 1139 (9th Cir. 1992) ..................................................................... 4

*Klaassen v. Trs. of Ind. Univ.*,
    7 F.4th 592 (7th Cir. 2021) ......................................................................... 9

*Lagos v. United States*,
    138 S. Ct. 1684 (2018) ................................................................................ 7

*Lamie v. U.S. Trustee*,
    540 U.S. 526 (2004) ................................................................................. 10

*National Federation of Independent Business v. Occupational Safety and Health Admin.*,
    142 S. Ct. 661 (2022) .......................................................................... 10, 11

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995) ................................................................................. 12

*Nat'l Mining Ass'n v. U.S. Dep't of Labor*,
    812 F.3d 843 (11th Cir. 2016) .................................................................... 18

*Nat'l Shooting Sports Found., Inc. v. Jones*,
    716 F.3d 200 (D.C. Cir. 2013) ................................................................... 16

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................. 20

*Skyworks, Ltd. v. CDC*,
    524 F. Supp. 3d 745 (N.D. Ohio 2021) ..................................................... 2, 7

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
    10 F.4th 869 (D.C. Cir. 2021)................................................................... 17

*United States v. Dean*,
    604 F.3d 1275 (11th Cir. 2010) ................................................................. 13

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) .................................................................... 12

*United States v. Mecham*,
   950 F.3d 257 (5th Cir. 2020) ...................................................... 20

*Util. Air Regulatory Grp. v. EPA*,
   573 U.S. 302 (2014) .................................................................... 10

*Va. Soc'y for Human Life, Inc. v. FEC*,
   263 F.3d 379 (4th Cir. 2001) ...................................................... 20

**Statutes**

5 U.S.C. § 553 ................................................................................. 12

5 U.S.C. § 706 ................................................................................. 13

42 U.S.C. § 264 ....................................................................... *passim*

**Regulations**

42 C.F.R. § 70.2 ............................................................................. 14

*Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*,
   86 Fed. Reg. 8025 (Feb. 3, 2021) ......................................... *passim*

**Other Authorities**

Amy Coney Barrett, *Substantive Canons and Faithful Agency*,
   90 B.U.L. Rev. 109 (2010) ............................................................. 7

Antonin Scalia & Bryan A. Garner, READING LAW (2012) .............................. 6

Bryan A. Garner et al., THE LAW OF JUDICIAL PRECEDENT (2016) ........... 19

Transp. Security Agency, *Staying Healthy While Traveling* (May 21, 2020),
   https://perma.cc/7AYK-C75G .................................................... 4

**INTRODUCTION**

Defendants explained in their motion for summary judgment, ECF No. 45 ("Defs.' Mot."), that the Transportation Mask Order[1] ("Order") was issued by the U.S. Centers for Disease Control and Prevention ("CDC") pursuant to an appropriate authorization by Congress.  The Order is also procedurally sound and well supported by the administrative record before CDC.  Plaintiffs' cross-motion and opposition, ECF No. 48 ("Pls.' Mot."), does not cast doubt on those conclusions.   Plaintiffs rely on an unduly narrow and grammatically incorrect interpretation of 42 U.S.C. § 264(a), the statute that authorizes the Order, and ignore evidence in the administrative record that demonstrates CDC's thorough consideration of the issues raised by the Order.  As explained below and in Defendants' opening brief, the Court should enter summary judgment in Defendants' favor on all of Plaintiffs' claims.

**ARGUMENT**

I.   **The Transportation Mask Order Falls Comfortably Within CDC's Statutory Authority.**

Defendants' motion showed that § 264(a) authorizes the imposition of "sanitation" measures, such as masking, on persons using public transportation, such as trains, planes, and buses.  Defs.' Mot. 14–20.  Plaintiffs' opposition and cross-motion attacks that conclusion by arguing that the Court must construe § 264(a)

---

[1] *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021).

narrowly and that masks do not fall within the meaning of the term "sanitation" under that narrow construction.   Plaintiffs then claim that Defendants interpretation of § 264(a) is not just wrong, but unreasonable, such that the Court should not defer to it pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  Each of these contentions is unsound.

### A.   The Transportation Mask Order Is a "Sanitation" Measure (or an "Other" Like Measure) Authorized by the Plain Text of § 264(a).

In § 264(a), Congress authorized CDC to adopt "regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases," including "sanitation" measures and "other" like measures.  The Supreme Court stated in *Alabama Association of Realtors v. Dept. of Health and Human Services* ("*AAR*") that these "measures directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself."  141 S. Ct. 2485, 2488 (2021).  The Order is just such a "sanitation" measure—or, at a minimum, an "other," similar measure—as it requires passengers on public transportation to wear masks, which work by trapping virus particles, thus reducing disease transmission. Plaintiffs' efforts to contort that plain-meaning interpretation are wrong at each turn.

To start, Plaintiffs argue that CDC has authority to order "sanitation" of only "contaminated animals and articles[,]" and has no authority (short of quarantine) to regulate "[h]uman beings," which "are neither 'animals' nor 'articles.'"  Pls.' Mot. 16 (quoting *AAR*, 141 S. Ct. at 2488, and citing *Skyworks, Ltd. v. CDC*, 524 F. Supp. 3d 745, 757–58 (N.D. Ohio 2021)).  They also quibble with the dictionary definitions

Defendants cite, claiming that they are divorced from the context of the statutory text. *Id.* at 16–17.   These arguments flow from a basic grammatical error in Plaintiffs' reading of the statute.   The phrase "of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings" in § 264(a) refers only to the measure immediately preceding it, "destruction"—not to the five other listed measures, including "sanitation." *Id.* at 14 (emphasis omitted).  If each of those five measures were limited to "animals or articles," one would expect to see the word "or" before "destruction" (not the word "and" before "other measures").  *Id.* And Plaintiff's reading leads to several implausible results: *e.g.*, that CDC can order "inspection," but only of items already "found to be so infected." *Id.*

Equally mistaken is Plaintiffs' assertion that the Supreme Court "conclu[ded]" in *AAR* "that the second sentence of § 264(a) limits the CDC's authority to, *inter alia*, 'sanitation of contaminated animals and articles.'" Pls.' Mot. 16 (quoting *AAR*, 141 S. Ct. at 2488).   The Court said no such thing:

> The Government contends that the first sentence of § [264(a)] gives the CDC broad authority to take whatever measures it deems necessary to control the spread of COVID–19, including issuing the moratorium. *But the second sentence informs the grant of authority by illustrating the kinds of measures that could be necessary: inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated animals and articles.* These measures directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself.

*AAR*, 141 S. Ct. at 2488 (emphasis added).   Here, the Supreme Court was summarizing the six powers explicitly mentioned in the second sentence of § 264(a) to illustrate the bounds of the broad grant of authority in the first sentence of § 264(a).   It did not hold

that the "animals or articles" limitation must be imposed on every power in § 264(a).

Plaintiffs also err by insisting on a narrow reading of the term "sanitation," which they would apply only to the "abatement of human waste"; the elimination of rodents, insects, or other vermin; or other similar issues. Pls.' Mot. 17–20. Typically, "[w]ords of both technical and common usage are construed in the latter sense unless the statute plainly indicates otherwise." *Huffman v. Comm'r of Internal Revenue*, 978 F.2d 1139, 1145 (9th Cir. 1992) (applying rule in the context of the Internal Revenue Code). But § 264(a) is free of technical jargon and speaks in common, readily understandable terms about what powers CDC may exercise. In common usage, both now and at the time of § 264(a)'s enactment, the term "sanitation" covers far more ground than Plaintiffs allow. *See* Defs.' Mot. 14 n.4. For example, a traveler might use "[h]and sanitizer" while waiting for her flight to arrive, and clean her tray table with "[s]anitizing wipes" before setting a drink upon it. Transp. Security Agency, *Staying Healthy While Traveling* (May 21, 2020), https://perma.cc/7AYK-C75G.

Plaintiffs' crabbed interpretation of § 264(a) would also lead to odd inconsistencies in CDC's authority. For example, Plaintiffs suggest that "disinfecting surfaces" might "fall[] within the realm of 'sanitation[,]'" but that "wearing gloves or a gown" would not. Pls.' Mot. 19. That arbitrary distinction cannot be discerned from the words of the statute, as "sanitation" is commonly understood to encompass matters of cleanliness and hygiene. Defs.' Mot. 14–15 & n.4. Moreover, under Plaintiffs' theory, CDC could order the "destruction" of animals and other private

property that are vectors for human infection, but would have no authority to order far milder interventions that act on individuals. CDC's mandate under § 264(a) to take "necessary" measures to prevent the "spread of communicable diseases" contains no hint that Congress wished to gerrymander CDC's authority in these ways.

Indeed, the central theory that underlies Plaintiffs' reading of the statute—that Congress granted CDC a "power that is . . . binary in nature: to either act on animals and articles, under Section 264(a), or to quarantine infected persons, under Section 264(b)–(d)[,]" Pls.' Mot. 24—is refuted by the text itself. All agree that subsection (a) grants CDC the power to impose reasonably necessary regulations, and subsections (b)–(d) place conditions on that power in the quarantine context—limitations that make perfect sense when an individual is apprehended or detained, and his or her freedom of movement constrained. But critically, those conditions apply only to "regulations prescribed under this section, *insofar as they provide for the apprehension, detention, examination, or conditional release of individuals*," 42 U.S.C. § 264(c) (emphasis added)—indicating that Congress contemplated that CDC might well prescribe *other* regulations that act upon individuals to which the conditions of subsections (b)–(d) would not apply. That is fatal to Plaintiffs' counterintuitive suggestion that Congress authorized CDC to quarantine individuals, but forbade it from imposing less-intrusive measures, no matter their ability to slow the spread of communicable disease.

Finally, Plaintiffs fault Defendants for not making a "finding that the wearing of masks constitutes a 'sanitation' measure" in the Transportation Mask Order. Pls.'

Mot. 20–21.   But there is no procedural requirement that CDC identify a particular measure as a "sanitation" measure before promulgating it under § 264(a).   Regardless, Plaintiffs entirely ignore that CDC's authority is not limited to "sanitation" measures, but extends to "other," similar measures, *see* Defs.' Mot. 14, which this qualifies as by any reasonable reckoning.   The question before the Court here is whether the Order is authorized by statute, and a fair reading of § 264(a) provides that authorization.

## B.   There Is No Warrant to Give § 264(a) an Atextually Narrow Reading.

Plaintiffs cannot escape this conclusion by urging a "narrow" construction of the Public Health Service Act that is at odds with its plain text.   Pls.' Mot. 13–16. Absent a "textual indication" directing such a reading of the statute, "there is no reason to give [§ 264(a)] anything other than a fair (rather than a 'narrow') interpretation." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (quoting Antonin Scalia & Bryan A. Garner, Reading Law 363 (2012)).   Plaintiffs identify no such "textual indication" in § 264(a), and the interpretive canons they invoke provide no sanction for giving § 264(a) anything but a fair interpretation of its terms.

Plaintiffs assert, for example, that an interpretation of § 264(a) that would give the CDC the power to "take reasonable public-health measures to prevent the spread of communicable disease" would give it a "general police power." Pls.' Mot. 13.   That is not a "textual indication" that § 264(a) should be read narrowly; it is an incorrect statement about what § 264(a) does.   The statute authorizes CDC to take measures that are "necessary to prevent the introduction, transmission, or spread of

communicable diseases" into or between the states.  42 U.S.C. § 264(a).  Congress has ample constitutional authority to regulate a global pandemic with unprecedented effects on foreign and interstate commerce, Defs.' Mot. 18–19, and the Order is fully in keeping with the Supreme Court's statement that Congress authorized CDC to impose sanitation (and other) measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *AAR*, 141 S. Ct. at 2488.  So understood, the existence of "broad authority . . . to prevent the transmission of communicable diseases" in no way implies a general "police power[,]" as even Plaintiffs' authorities acknowledge.  *See Skyworks*, 524 F. Supp. 3d at 758.

Plaintiffs also confuse "narrow[] construction" with *noscitur a sociis*, the principle that "statutory words are often known by the company they keep[.]"  *Lagos v. United States*, 138 S. Ct. 1684, 1688–89 (2018).  Plaintiffs contend that the examples of other measures listed in § 264(a) should constrain the Court's understanding of the word "sanitation."  Pls.' Mot. 13–15 (citing *Skyworks*, 524 F. Supp. 3d at 757–58).  But the purpose of linguistic canons, such as *noscitur a sociis*, is simply "to decipher the legislature's intent" as expressed in the text of the statute.  Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U.L. REV. 109, 117 (2010).  And here, given Congress's intent to authorize CDC to take "measures [that] directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself[,]" *AAR*, 141 S. Ct. at 2488, a conventional "sanitation" measure like masking, which traps viral particles and thus reduces disease transmission, accords

with the legislative plan as expressed by the plain text of § 264(a).

**C.   Defendants' Interpretation Is, at a Minimum, a Reasonable One Entitled to *Chevron* Deference.**

The Court need go no further to conclude that § 264(a) authorizes the Order. But to the extent the Court finds the question to be a close one, Defendants still prevail on Plaintiffs' "contrary to law" claim because Defendants' construction of § 264(a) is a reasonable one that warrants deference under *Chevron*. 467 U.S. at 842.

In arguing otherwise, Plaintiffs first claim that the Supreme Court in *AAR* "already resolved" the question here, rendering Defendants' reading unreasonable. But their argument—which focuses on the Court's remark that § 264(a) permits CDC to "prevent[] the interstate spread of disease by identifying, isolating, and destroying the disease itself[,]" *AAR*, 141 S. Ct. at 2488 (quoted at Pls.' Mot. 22)—is circular. The quoted passage merely describes the various enumerated powers in § 264(a), including "sanitation." *Id.* It does not tell us what counts as "sanitation," and certainly does not show that it is "unreasonable" to conclude that masking qualifies.

Plaintiffs next turn to the other provisions of § 264 for "context," arguing that "it is only through the quarantine authority of subsections (b) through (d) that Congress has left the CDC a 'gap' for imposing on the liberty of individuals." Pls.' Mot. 23–24. Not so: As explained above, the statutory conditions on the quarantine authority apply only "insofar as" the "regulations prescribed under" § 264 "provide for the apprehension, detention, examination, or conditional release of individuals," 42 U.S.C. § 264(c), meaning that CDC may impose other, less-intrusive, measures on

individuals.  *See supra* pp. 5.  Moreover, courts across the country[2] have held that masking "cannot be said to violate any fundamental right" protected by the Constitution.  *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (Easterbrook, J.).  Again, Plaintiffs' fixation on the phrase "animals or articles" in § 264(a) gets in the way: as noted earlier, only the term "destruction" is limited to "animals or articles."  *See supra* pp. 2–3.  The same failure pervades Plaintiffs' invocation of regulations governing vessels and foreign quarantines.  Pls.' Mot. 24.

It is not implausible to think that Congress would authorize CDC to subject individuals to quarantine, provided certain conditions are met, while also authorizing it to impose less-intrusive measures on individuals where necessary to prevent the spread of disease.  Section 264(a) is just such a scheme.  Plaintiffs' implausible suggestion that, not having been "fortunate enough to have located and isolated COVID-19 '*Patient Zero*'" in early 2020, CDC was disqualified from imposing milder measures later, *see* Pls.' Mot. 24–25, finds no support in the text of § 264.

Next, Plaintiffs argue that Defendants' interpretation is unreasonable in light of the so-called "major rules doctrine[,]" which they contend counsels against interpretations by which "'an agency claims to discover in a long-extant statute an

---

[2] *See Branch-Noto v. Sisolak*, — F. Supp. 3d —, No. 2:21-cv-01507, 2021 WL 6064795 (D. Nev. Dec. 22, 2021) (no fundamental right to send a child to school without a mask); *Cruz ex rel. L.C. v. Pritzker*, No. 21-cv-5311, 2021 WL 5906059, at *2–3 (N.D. Ill. Dec. 14, 2021) (mask mandate does not violate substantive due process); *Doe v. Franklin Square Union Free Sch. Dist.*, —F. Supp. 3d —, No. 2:21-cv-5012, 2021 WL 4957893, at *16–19 (E.D.N.Y. Oct. 26, 2021) (no fundamental right implicated by mask mandate).

unheralded power to regulate a significant portion of the American economy[.]'" Pls.' Mot. 26–27, 31–32 (quoting *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014)). But this case bears little resemblance to the Supreme Court decisions they invoke.

In *AAR*, the Supreme Court cited *Utility Air* in invalidating CDC's eviction moratorium, emphasizing the moratorium's "vast" economic significance—estimated at $50 billion—and expressing concern that the agency was intruding upon an area "that is the particular domain of state law" by intervening in the landlord-tenant relationships of millions of Americans. *AAR*, 141 S. Ct. at 2489. This case raises no such concerns: Federal regulation of public transit is pervasive, so the Order does not upset any settled expectations of federalism. Any economic impact is orders of magnitude less. And unlike a moratorium on evictions, which the Supreme Court held "relates to interstate infection" in an "indirect[]" way "markedly different from the direct targeting of disease that characterizes the measures identified in the statute[,]"*id.* at 2488, mask wearing is a "sanitation" measure that directly impedes viral transmission. Under such circumstances, "the sole function of the courts . . . is to enforce [the statute] according to its terms[,]" not to adopt narrowing constructions that frustrate Congress's intentions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

Plaintiffs' reliance on *National Federation of Independent Business v. Occupational Safety and Health Admin.*, 142 S. Ct. 661 (2022) (*NFIB*), is equally misplaced. Plaintiffs argue that, just as the Supreme Court concluded OSHA overstepped its authority "to set workplace safety standards" by issuing a "broad public health measure[]" regarding

vaccination, 142 S. Ct. at 665, the CDC has stepped outside of its lane to promulgate a "transportation safety" measure under the guise of "public health," Pls.' Mot. 28–29. That analogy does not hold. Unlike OSHA, Congress did not limit CDC's regulatory authority to a particular setting. Indeed, the statute necessarily contemplates that the agency would act in the transportation sector, which is how communicable disease spreads "from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). And unlike a vaccine requirement, which "cannot be undone at the end of the workday[,]" *NFIB*, 142 S. Ct. at 665, a mask is a temporary inconvenience, removable at the end of travel. As a consequence, there is no "elephant in the mousehole" problem, Pls.' Mot. 29, or a basis for applying a narrowing interpretation due to a "lack of historical precedent," *id*. (quoting *NFIB*, 142 S. Ct. at 666)—a charge adequately answered by the simple observation that not since the statute's 1944 enactment has the United States faced a public health threat so disruptive to the Nation generally and our transportation system in particular.

Finally, contrary to Plaintiffs' claim, Pls.' Mot. 29–30, the absence of notice and comment does not change the analysis. *See Barnhart v. Walton*, 535 U.S. 212, 221 (2002) ("that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking, . . . does not automatically deprive that interpretation of the judicial deference otherwise its due"). Plaintiffs do not rebut any of the other bases for according Defendants' interpretation of § 264(a) *Chevron*

11

deference: Congress's clear mandate to CDC to "make and enforce such regulations as in [the agency's] judgment are necessary to prevent . . . spread of communicable diseases," 42 U.S.C. § 264(a); the formal nature of the Transportation Mask Order; the fact that the Order carries the force of law; and CDC's public-health expertise.  Defs.' Mot. 18 n.7.  These factors are dispositive here, "even when no such administrative formality was required and none was afforded," and the interpretation is relatively new.  *United States v. Mead Corp.*, 533 U.S. 218, 230–31 (2001); *see also NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995) (according *Chevron* deference to interpretive letter written six years prior to the Supreme Court's decision).

Defendants' construction of § 264(a) is, at minimum, a reasonable one, and Plaintiffs advance no sound reason for not deferring to it under *Chevron*.  As such, judgment in Defendants' favor on Plaintiffs' statutory-authority claim is appropriate.

## II.   <u>The Transportation Mask Order Is Procedurally Proper.</u>

As Defendants have explained, CDC properly relied upon 5 U.S.C. § 553(b)(B) to forgo notice and comment in issuing the Transportation Mask Order.  Defs.' Mot. 29–31.  Plaintiffs accuse Defendants of engaging in "circular" reasoning that fails to "defend the CDC's claim of a 'public health emergency'" and, by extension, Defendants' conclusion that "good cause" excused notice and comment.  Pls.' Mot. 32–34.  Not so.  Defendants described Plaintiffs' claim that "any COVID-related emergency had long passed by early 2021" when the Transportation Mask Order issued as "factually incorrect," Defs.' Mot. 30 (cleaned up), and explained that "good-

12

cause" for forgoing notice and comment existed in light of a "pandemic that has already killed more than 847,000 Americans," *id.*

Even if Plaintiffs' misguided view about the seriousness of the pandemic was credited, the Order is not procedurally defective.  Whether or not one believes that COVID-19 was still an "emergency" in February 2021, the Transportation Mask Order makes the appropriate finding under § 553(b)(B) that "there is good cause to believe that delay" in issuing the rule necessary to complete the notice-and-comment process "would do real harm." *United States v. Dean*, 604 F.3d 1275, 1281 (11th Cir. 2010); *see* Defs.' Mot. 30.  The Supreme Court reached the same conclusion in *Biden v. Missouri*, 142 S. Ct. 647 (2022), which upheld an agency's finding of "good cause" to skip notice and comment for a vaccination requirement issued over a year and a half after the pandemic began. *Id.* at 651, 654.  Plaintiffs make no effort to distinguish *Missouri* from any case they rely upon, including *Florida v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021), *appeal dismissed as moot*, No. 21-12243 (11th Cir. Jan. 19, 2022).

Plaintiffs have also failed to show that their inability to comment on the Order had any "bearing on its substantive decision," such that a procedural fault would have prejudiced them. *Ala. Hosp. Ass'n v. Beasley*, 702 F.2d 955, 958 (11th Cir. 1983) (applying 5 U.S.C. § 706).  They argue that Defendants have "overstate[d] [their] burden" in terms of showing prejudice, but when pressed to explain why notice and comment would have made a difference, Plaintiffs have little to offer. Pls.' Mot. 34–35; *see, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140

(D.D.C. 1999) (finding notice-and-comment error harmless "where a petitioner did 'not explain what it would have said had it been given' an opportunity to respond") (quoting *Air Transp. Ass'n of Am. v. Civil Aeronautics Bd.*, 732 F.2d 219, 224 n.11 (D.C. Cir. 1984)). They criticize CDC's "one-sided" consideration of the evidence, but fail to suggest what sort of evidence Plaintiffs might have submitted to CDC that would have persuaded it to reach a different outcome. Plaintiffs also reference changing "[p]ublic attitudes" toward COVID, Pls.' Mot. 35–36, but only cite evidence from early 2022 that they could not have provided to the CDC in early 2021.

There was good cause to issue the Order without notice and comment, and a different process would not have changed the outcome here. Accordingly, the Court should enter judgment in Defendants' favor on Plaintiffs' procedural APA claim.

## III.   The Transportation Mask Order Is Not "Arbitrary Or Capricious."

Plaintiffs make two overarching contentions to support their contention that the Order is arbitrary or capricious. Pls.' Mot. 37–40. First, they argue that CDC violated 42 C.F.R. § 70.2 by not making a determination that measures taken by "any State or possession . . . are insufficient to prevent the spread of any of the communicable diseases" from state to state. Pls.' Mot. 37 (quoting 42 C.F.R. § 70.2). Second, they argue that the Order is not reasonable. *Id.* at 39. Neither argument has merit.

### A.   The Order Satisfied 42 C.F.R. § 70.2

Plaintiffs contend that the Order ran afoul of 42 C.F.R. § 70.2, which authorizes CDC to act when it "determines that the measures taken by health authorities of any State or possession . . . are insufficient to prevent the spread" of communicable disease

14

between states.  But the CDC reasonably determined that "[a]ny state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID-19 from such state or territory to any other state or territory[,]" carving out locales that "provide the same level of public health protection as—or greater protection than—the requirements listed herein."  86 Fed. Reg. at 8029–30.  That rationale is actually quite different from the one the district court rejected in *Becerra* on the grounds that it said "nothing evaluative" about state and local measures.  *Becerra*, 544 F. Supp. 3d at 1293.  Plaintiffs may disagree with CDC's "evaluation," but cannot credibly argue that Defendants failed to make one.

###  B.   The Transportation Mask Order Is Reasonable and Reasonably Explained

Plaintiffs arguments that the masking order is not "reasonable and reasonably explained" can be grouped into four categories.  First, Plaintiffs incorporate by reference their arguments opposing *Chevron* deference.  Second, Plaintiffs claim that CDC ignored basic scientific principles in evaluating the scientific evidence that supports masking.  Third, Plaintiffs assert that CDC failed to weigh the harms of masking.  Fourth, Plaintiffs criticize CDC for failing to provide various "metrics."  None of these contentions has merit.

####  1.   CDC Rationally Concluded That the Mask Order Would Help Limit the Spread of COVID-19.

In arguing against *Chevron* deference, Plaintiffs assert (1) that current COVID-

19 case data prevents CDC from "claim[ing] that the Mask Order does anything to prevent the spread of COVID-19"; (2) that the agency's line drawing as to who and what it regulates is irrational; and (3) that the Order was futile insofar as it did not prevent the spread of COVID-19.  Pls.' Mot. 27–28.

Point (1) relies on data about the number of COVID cases diagnosed after the Order's issuance.  This Court's review is limited to "the grounds that the agency invoked when it took the action."  *Dep't of Homeland Sec'y v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (citation omitted).  Even so, the argument reflects a basic error in logic: increases in cases do not disprove the utility of masks, as they say nothing about how much higher those increases may have been in the absence of masking—particularly given the more contagious Delta and Omicron variants.  The CDC was entitled to rely on the studies at its disposal in 2021 concluding that masking in congregate settings is an effective means for limiting the spread of an airborne disease such as COVID-19.  86 Fed. Reg. at 8028.  That choice remains a rational one today, consistent with the widespread medical consensus.  *See* Defs.' Mot. 21–22.

Point (2) seems to blame CDC for regulating everyone, not just the infected, in public places, while simultaneously not regulating every way a person infected with COVID-19 could cross state lines.  These sorts of "line-drawing decisions" as to the contours of "sanitation" measures are for the agency to decide.  *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214-15 (D.C. Cir. 2013).  Moreover, "agencies have great discretion to treat a problem partially"; CDC's restraint does not make the Order

16

arbitrary or capricious. *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 875 (D.C. Cir. 2021) (citation omitted).

Point (3) makes an error similar to the error Plaintiffs make in point (1). Plaintiffs point to no evidence that the Order was an exercise in futility, and evidence in the record shows that masking would make a difference even when accounting for other trends in the trajectory of the pandemic. In February 2021, that rational judgment was shared by much of the country (including the Chief Judge of this Court, *see* M.D. Fla. COVID-19 Order (July 30, 2021), ECF No. 45-5), and even if reasonable minds could differ, that is no basis for declaring the Order unlawful.

### 2.    CDC's Weighing of Scientific Evidence Was Appropriate.

Plaintiffs generally criticize CDC's reliance on studies about the effectiveness of masking, focusing on a study out of Germany for allegedly "fail[ing] to account for [other] variables" in concluding that mask wearing was effective. *See* Timo Mitze et al., *Face Masks Considerably Reduce COVID-19 Cases in Germany: A Synthetic Control Method Approach*, IZA Institute of Labor Economics Discussion Paper Series No. 13319, at 2 (June 2020), CDC_TMO_000053–70 (hereinafter "Mitze"). That argument is belied by the very study Plaintiffs hold up for criticism.

Far from attributing all observed decline in COVID-19 cases to masking, Mitze used a "synthetic control method" to decipher whether the early adoption of masking by the city of Jena, Germany lowered COVID-19 cases relative to other communities. That included use of "placebo tests" to "check[] whether other cities that did not

introduce face masks" as early as Jena "nonetheless experienced a decline" in COVID-19 cases. CDC_TMO_000056, 64. Mitze concluded Jena's mask policy reduced the spread of COVID-19 relative to a decline in cases in the "synthetic control unit":



*Id.* at CDC_TMO_000062; *see also id.* at CDC_TMO_000056 ("[E]arly introduction of face masks . . . resulted in a reduction of almost 25% in the cumulative number of reported Covid-19 cases after 20 days.").

The CDC is due an "extreme degree of deference" in its assessment of scientific evidence. *Nat'l Mining Ass'n v. U.S. Dep't of Labor*, 812 F.3d 843, 866 (11th Cir. 2016) (citation omitted). Plaintiffs give no sound reason for questioning that deference here.

### 3. CDC Considered, and Accommodated, Health Concerns Related to Mask-Wearing.

Plaintiffs claim CDC "failed to consider any countervailing harms resulting from extended mask-wearing, on adults and children." Pls.' Mot. 40. Not so. The Order exempts those who "cannot safely wear a mask" for a medical reason, as well as young children. 86 Fed. Reg. at 8027. The Order also allows a person "experiencing difficulty breathing or shortness of breath" to remove a mask until they

can breathe normally, and to remove a mask to eat, drink, or take medication. *Id.* at 8027 & n.7. Plaintiffs find these exceptions inadequate, but they cannot claim that CDC entirely ignored health risks associated with mask wearing.

### 4. CDC Was Not Under an Obligation to Provide "Metrics."

Finally, Plaintiffs criticize CDC for "provid[ing] no metric by which to determine how and when" the Order will be phased out. Pls.' Mot. 40. That criticism, like related criticisms about "metrics" throughout Plaintiffs' brief, is misplaced. Section 264(a) authorizes CDC to make regulations "necessary" to prevent interstate spread of disease. The Order explains the state of necessity in this case. 86 Fed. Reg. at 8028–29. CDC chose not to decide in advance when masking would no longer be necessary, leaving the issue for consideration in a future order.[3] *Id.* at 8030. "Agencies are not compelled to explore every alternative device and thought conceivable by the mind of man[,]" and the Order is not legally infirm for failing to incorporate Plaintiffs' desired "metrics." *Regents*, 140 S. Ct. at 1915 (internal quotation omitted).

## IV. Plaintiffs' Non-Delegation Doctrine Claim Is Meritless.

Controlling precedent dooms Plaintiffs' non-delegation claim. Even when "the Supreme Court appears poised to overturn its own precedent," as Plaintiffs argue, "federal courts must follow" that precedent. Bryan A. Garner *et al.*, THE LAW OF JUDICIAL PRECEDENT 30 (2016); *see also Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 447

---

[3] On March 10, 2022, CDC announced that, in advance of April 18, 2022, it will work with government agencies to help inform a revised policy framework for when, and under what circumstances, masks should be required in the public transportation corridor.

(5th Cir. 2020) (lower federal courts "are not supposed to . . . read tea leaves" (quoting *United States v. Mecham*, 950 F.3d 257, 265 (5th Cir. 2020)). Defendants' plain-meaning construction of § 264(a) both authorizes the Order and provides the necessary "intelligible principle" for CDC to exercise that delegated authority. Indeed, § 264(a) provides relatively detailed guidance compared to many delegations of authority the Supreme Court has upheld in the past. *See* Defs.' Mot. 32–33. Summary judgment in Defendants' favor on Plaintiffs' non-delegation claim is appropriate.

## V.   **Plaintiffs Are Limited to a Declaratory Judgment, at Most.**

Plaintiffs have represented they are seeking a declaratory judgment in this case, not an injunction. Pls.' Resp. to Defs.' Mot. to Transfer, ECF No. 26, at 10. The Court relied on that representation to deny Defendants' motion to transfer. Order Denying Mot. to Transfer, ECF No. 35, at 8. Plaintiffs are therefore estopped from seeking an injunction. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Any relief in this case, declaratory or otherwise, should be "tailored to redress the [Plaintiffs'] particular injur[ies]" consistent with the limitations of Article III and principle of equity. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *see also Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393-94 (4th Cir. 2001) ("language of the APA" does not require courts to invalidate a rule "for the entire country").

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for summary judgment, and deny Plaintiffs' cross-motion for summary judgment.

20

Dated: March 16, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ROGER B. HANDBERG
United States Attorney

ERIC B. BECKENHAUER
Assistant Branch Director

By: */s/ Michael J. Gerardi*
STEPHEN M. PEZZI
ANDREW F. FREIDAH
JOHNNY H. WALKER
MICHAEL J. GERARDI
  Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: 202-616-0680
Email: michael.j.gerardi@usdoj.gov

*Attorneys for Defendants*