UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:21-cv-1693-KKM-AEP

HEALTH FREEDOM DEFENSE FUND, INC., a Wyoming Not-for-Profit Corporation, ANA CAROLINA DAZA, and SARAH POPE, individuals,

    Plaintiffs,

vs.

JOSEPH R. BIDEN, JR., President of the United States; XAVIER BECERRA, Secretary of Health and Human Services, in his official capacity; THE DEPARTMENT OF HEALTH AND HUMAN SERVICES; THE CENTERS FOR DISEASE CONTROL; ROCHELLE P. WALENSKY, MD, MPH, Director of the Centers for Disease Control and Prevention, in her official capacity; and MARTIN S. CETRON, MD, Director, Division of Global Migration and Quarantine, Centers for Disease Control and Prevention, in his official capacity; The UNITED STATES OF AMERICA,

    Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

I. **Defendants Fail to Demonstrate That The Mask Order Falls Within The CDC's Statutory Authority.**

   A. **Defendants' Broad Interpretation of 42 USC § 264(a) Is at Odds with the Statutory Text, CDC Regulations, and Precedent.**

Defendants argue that § 264(a)'s reference to "sanitation" extends beyond "contaminated animals and articles," and that Plaintiffs have committed a "grammatical error" in reading the statute and in construing the Supreme Court's opinion in *Alabama Ass'n of Realtors v. Dept. of Health and Human Svcs.* ("*AAR*"), 141 S. Ct. 2485 (2021). Reply at 2-4. But every court that has addressed the question has found that § 264(a) pertains to animals, articles, other matter, or property, not people. *See Tiger Lily, LLC v. HUD*, 992 F.3d 518, 522 (6th Cir. 2021) (construing § 264(a) as authorizing "government intrusion on property to sanitize and dispose of infected matter[.]"); *Skyworks, Ltd. v. CDC*, 524 F. Supp. 3d 745, 757-58 (N.D. Ohio 2021) (finding that § 264(a) "directs the [CDC] to act on specific animals or articles which are themselves infected or a source of contagion[.]"). Judge Merryday of this District likewise concluded that § 264(a) "allows the regulation of only an infected or infecting item." *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1270 (M.D. Fla. 2021). This conclusion is entirely consistent with § 264(a)'s purpose, which Defendants acknowledge, of "preventing the spread of disease by identifying, isolating, and destroying the disease, itself." *AAR, supra.*

1

Second, Defendants assert that "Plaintiffs [] err by insisting on a narrow reading of the term sanitation,'" and argue that common usage of the term "covers far more ground than Plaintiffs allow." *Id*. at 4. But Plaintiffs rely on the word's historical meaning in domestic and international public health regulations, including the CDC's own regulations interpreting its powers under § 264. *See* ECF 48 at 16-20 & 24. One would expect Defendants to point to at least one example of a regulation interpreting "sanitation" in a manner consistent with the power claimed in the Mask Order. Yet, Defendants are unable to do so.

Defendants complain that Plaintiffs' interpretation would lead to "odd inconsistencies in the CDC's authority," in that disinfecting surfaces might fall within the realm of sanitation, but wearing gloves or a gown would not. *Id*. But Defendants have not pointed to a single instance in which the CDC has likened such garments to "sanitation," and nothing in the administrative record supports such an interpretation.

Defendants claim a further inconsistency in that, as they frame Plaintiffs' argument, the CDC would have the power to "order the 'destruction' of animals and other private property. . . , but would have no authority to order far milder interventions that act on individuals." Reply at 4-5. But again, the overall scheme of § 264, including the CDC's regulations interpreting the statute as a whole, clearly divides the statute's authority over property and individuals into separate

categories.  *See Tiger Lily*, 992 F.3d at 522 (distinguishing between "property interests," under § 264(a), and "liberty interests," under § 264(d)).  *See also* ECF 48 at 22-25.  It is therefore unsurprising that the CDC could order the destruction of a diseased animal at a U.S. port under § 264(a), while lacking the authority to require human passengers to wear masks.

Defendants suggest that the language of § 264(c) implies a broader, unstated authority to impose "less-intrusive measures" than quarantine on individuals. Reply at 5.  However, by its terms § 264(c) addresses the authority to quarantine persons arriving from foreign ports.  It has nothing to do with any authority to govern the conduct of individuals in interstate travel.  Moreover, the CDC's regulations divide "Sanitary Inspection" of vessels arriving from foreign ports under § 264(a) and quarantine of persons under § 264(c) into separate subparts. *See* 42 CFR Part 71, Subparts D and E.  Even as to persons traveling from abroad, the CDC has never interpreted § 264(a) to claim the sort of authority it claims here.

This District rejected a similar argument, raised in *Becerra*, that § 264(b)-(d) shows that "'other measures' [under § 264(a)] include measures far beyond fumigation, extermination, and the like." *Becerra*, 544 F. Supp. 3d at 1270-71.  The court disagreed, pointing out that, "even though these subsections, if read in isolation, expand the authority suggested by subsection (a) . . . , *the additional subsections do not supplant the reach of the first* or create other grounds justifying the

3

orders at issue." *Id.* at 1271 (citation and internal quotation marks omitted) (emphasis added).[1] In other words, § 264(c) cannot be read to expand the CDC's authority under § 264(a).

Defendants claim that the CDC was not required to include a finding in the Order that masks constitute a "sanitation" measure under § 264(a). Reply at 5-6. But the absence of any mention of masks as a "sanitation" measure underscores the fact that Defendants' reliance on the word is but a *post hoc* rationale.

Defendants ellipse the opinion in *Skyworks* to suggest that the CDC's claim of "broad authority" under § 264(a) "in no way implies a general 'police power.'" Reply at 7. But the *Skyworks* court said the opposite. As in *Becerra*, the court rejected the government's contention that § 264(b)-(e) expanded the scope of § 264(a), and concluded that the authority claimed by the CDC under the latter subsection would be "tantamount to creating a general federal police power." *Skyworks*, 524 F. Supp. 3d at 758 (cited in *Becerra, supra* at 1271).

Defendants accuse Plaintiffs of conflating "narrow construction" with the principle of *noscitur a sociis*. Reply at 7. However, the doctrine of *noscitur a sociis* is meant to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of

---

[1] *See also Ala. Ass'n. of Realtors v. HHS*, Case No. 20-cv-3377, 2021 U.S. Dist. LEXIS 85568, *22-23 (D.D.C. May 5, 2021).

4

Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015). Accordingly, the second sentence of § 264(a) must be read to constrain, limit, or indeed *narrow* the breadth of the first. *See, e.g., AAR*, 141 S. Ct. at 2488; *Becerra, supra* at 1268 (noting that "the first sentence of § 264(a) is tethered to — and narrowed by — the second sentence.") (citation omitted). And, as noted above, courts have consistently found that § 264(a) applies only to animals and articles, or "only an infected or infecting item." *Becerra, supra* at 1270.

### B. Defendants Fail to Show that Their Interpretation of § 264(a) Is Entitled to *Chevron* Deference.

Defendants' argument that the CDC's interpretation is entitled to *Chevron* deference largely recycles arguments that Plaintiffs have already addressed. First, Defendants' assumption that § 264(a) authorizes the regulation of individuals is foreclosed by multiple decisions, discussed above, finding that it only applies to animals and articles, infected or infecting items, or property interests.

Defendants argue that the decision in *AAR* "does not tell us what counts as 'sanitation,' and certainly does not show that it is 'unreasonable' to conclude that masking qualifies." Reply at 8. However, even assuming that § 264(a) could apply to persons, which it does not, Defendants have failed to show how a mask mandate fits within the definition of "sanitation" or similar measure. And Defendants' argument that subsections (b) through (d) mean that the CDC "may impose other, less-intrusive measures on individuals" under subsection (a), Reply at 7-8, has

5

already been rejected by this and other districts. *See Becerra, supra* at 1271; *Skyworks, supra* at 758; *Ala. Ass'n. of Realtors*, 2021 U.S. Dist. LEXIS 85568 at *22-23.

Defendants argue that mandatory masking does not violate any "fundamental right" protected by the Constitution. Reply at 9 (citing, *inter alia*, *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021)). But Plaintiffs have made no such claim, nor are they required to do so. Moreover, all but one of the cases cited by Defendants addressed a general police power of the states as construed under *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).² Since the federal government has no general police power, *Bond v. United States*, 572 U.S. 844, 854 (2014), *Jacobson* and its progeny have no bearing on this case.

Defendants take issue with Plaintiffs' invocation of the major rules doctrine, claiming that the Mask Order does not have the same degree of impact as the eviction moratorium addressed in *AAR*. Reply at 9-11. But Plaintiffs did not merely allege that the Mask Order is a major rule; the Order itself says it is. *See* 86 Fed. Reg. at 8030. Defendants provide no authority for drawing quantitative distinctions between one major rule and another.

Defendants assert that "[f]ederal regulation of public transport is pervasive, so the Order does not upset any expectations of federalism." Reply at 10. But the

---

² Of the cases cited in Defendants' Reply at 9 and fn. 2, all but *Cruz ex rel. L.C. v. Pritzker* were decided based on *Jacobson*. *Pritzker* was dismissed for lack of Article III standing.

6

history of the Public Health Service Act shows that "the public health power" is still understood as "a function of state police power." *Becerra, supra* at 1263-64. As well, the CDC's own regulation under § 264(a) requires, as a precursor to taking action that would affect a state, a finding that measures by state and local health authorities are insufficient. *Id.* at 1273 (discussing 42 CFR § 70.2). This demonstrates an intent "to bridle the federal government and to encourage federalism." *Id.* at 1293.

Defendants claim that, unlike the eviction moratorium at issue in *AAR*, "mask wearing is a 'sanitation' measure that directly impedes viral transmission." Reply at 10. But Plaintiffs have already demonstrated that: (1) § 264(a) does not authorize the CDC to regulate individual conduct; and (2) masks are not a "sanitation" or like measure within the meaning of the statute.

Defendants argue that Plaintiffs have incorrectly drawn a comparison to the agency overreach addressed in *NFIB v. OSHA*, 142 S. Ct. 661 (2022). But being prevented from visiting relatives or vacationing with family by an arbitrary government *dictat*, as has happened to multiple Plaintiffs in this case,[3] is no "temporary inconvenience." It is, in fact, quite distressing.

---

[3] *See* Decl. of Ana Daza, ECF 48-2; Decl. of Sarah Pope, ECF 48-3; Decl. of Kelly Pratt, Paula Jager, and Peter D. Kennedy on behalf of Plaintiff HFDF, ECF 39-4.

7

Defendants ascribe the lack of historical precedent for the Mask Order to their observation that "not since the [PHSA's] 1944 enactment has the United States faced a public health threat so disruptive to the Nation generally and our transportation system in particular." Reply at 11. But much of the disruption of the last two years – to the economy, careers, children's education, families, and to the "transportation system in particular" – can be laid at the feet of government officials whose hubris and self-aggrandizing obsession with a single data point led them to treat the governed like subjects rather than citizens, upending the livelihoods, health, and well-being of untold millions of people. The CDC – whose "public-health expertise" laid dormant on this matter for a year until the appearance of a new Administration – has yet to provide an accounting of what, if anything, we gained from it.

Regarding the absence of notice-and-comment, Defendants repeat their citations to *Barnhart v. Walton*, 535 U.S. 212 (2002) and *United States v. Mead Corp.*, 533 U.S. 218 (2001) without making any effort to address Plaintiffs' distinction of those cases. *See* ECF 48 at 30. *Unlike* the Customs classifications in *Mead*, Defendants claim that the Mask Order has the force of law, and *unlike* the rule addressed in *Barnhart*, the Order constitutes an entirely novel and unprecedented interpretation of a long-extant statute. Thus, the complete failure to allow notice-and-comment indicates that the Mask Order is not entitled to *Chevron* deference.

8

## II.   The Order Was Not Procedurally Proper.

Defendants again fail to defend the Order's claim of a "public health emergency," but still argue that whether an emergency existed is irrelevant because the CDC still had good cause to forego notice-and-comment. Reply at 12-13. First, Defendants simply repeat their citation to *United States v. Dean*, 604 F.3d 1275 (11th Cir. 2010), *id.* at 13, but make no effort to rebut Plaintiffs' argument as to why that case is inapt. *See* ECF 48 at 33.

Defendants also point to *Biden v. Missouri*, 142 S. Ct. 647 (2022) as validating the CDC's invocation of good cause. Reply at 13. But Defendants cannot claim that the CDC's findings in the Mask Order presented anything close to the nearly four pages of findings on good cause found in the CMS vaccination rule. *See* 86 Fed. Reg. at 61,583-86. And the Secretary's allowance for notice-and-comment during an interim period, *id.* at 61,555-56, helped persuade the majority in *Missouri* that the rule's good cause findings were sufficient. 142 S. Ct. at 654.

By contrast, the Mask Order did not allow for notice-and-comment at all, and its finding on good cause amounts to a single, conclusory sentence: "Considering the public health emergency. . . , it would be impracticable and contrary to the public's health . . . , to delay the issuance and effective date of this Order." 86 Fed. Reg. at 8030. As previously noted, the "public health emergency" had been declared a year before then, and Defendants fail to rebut the point that

9

"[g]ood cause cannot arise as a result of the agency's own delay[.]" *Nat. Res. Def. Council v. Nat'l Hwy. Traf. Safety Admin.*, 894 F.3d 95, 114 (2d Cir. 2018). ECF 48 at 34.

Rather than justify the CDC's one-year delay, Defendants point out that the CMS rule at issue in *Missouri* was "issued over a year and a half after the pandemic began." Reply at 13. But COVID vaccines only became widely available during the first half of 2021.[4] Moreover, the CMS rule included an acknowledgment that no COVID vaccine had been licensed prior to August 23, 2021.[5] 86 Fed. Reg. at 61,584. The CDC had no such justification.

Finally, Defendants argue that "Plaintiffs have little to offer" in terms of whether the failure of notice-and-comment was harmless error. Reply at 13-14. But when an agency utterly fails to allow notice-and-comment, "even a minimal showing of prejudice may suffice to defeat a claim of harmless error." *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1383 (Fed. Cir. 2017). Plaintiffs have met that minimal burden. *See* ECF 48 at 35-36.

---

[4] It is easy to forget how difficult the initial vaccine rollout proved to be. *See* https://www.usatoday.com/story/news/health/2021/01/31/covid-vaccine-what-went-wrong-distribution-whats-being-changed/4275954001/ (last viewed on March 29, 2022).

[5] Under federal law, a person being offered an unlicensed product under an emergency use authorization must be advised of, *inter alia*, his or her option to refuse administration of the product. *See* 21 U.S.C. § 360bbb-3(e)(1)(A). The administration took the public position that this was no barrier to mandating vaccination. *See* 86 Fed. Reg. at 61,583. But CMS was no-doubt aware that a prior attempt to mandate an unapproved vaccine did not go the government's way. *See Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003), 341 F. Supp. 2d 1 (D.D.C. 2004).

### III.     The Mask Order Is Arbitrary And Capricious.

####    A.     The Order Violated 42 CFR § 70.2.

Unable to explain how the Mask Order "scrupulously" followed the CDC's own regulation, as required pursuant to *Sierra Club v. Martin*, 168 F.3d 1 (11th Cir. 1999), Defendants attempt to distinguish the CDC's determination in the Mask Order from that of the order in *Becerra*. Reply at 15. But this fails to address the reason *why* the *Becerra* court rejected the CDC's determination in that case.

In *Becerra*, the court found that the CDC's "global dismissal of state and local health measures fail[ed] to offer the type of reasoned finding required by Section 70.2," and said "absolutely nothing evaluative about any 'measure taken by health authorities of any state.'" *Becerra,* 544 F. Supp. 3d at 1293. Thus, it was "not at all a scrupulous attempt" to adhere to § 70.2, "and, apparently, no attempt at all[.]" *Id*. The CDC's finding relied "on only a conclusory and dubious but self-serving generalization that non-federal measures are inherently insufficient to protect public health and safety." *Id*. It "neither evaluate[d] nor even mention[ed] measures undertaken or planned" by state and local health authorities, "but, nevertheless, [found] the measures inherently and inescapably insufficient[.]" *Id*.

Similarly, the CDC's finding in the Mask Order says nothing evaluative about what constitutes "sufficient mask-wearing requirements for transportation systems," and what states or local governments failed to meet those requirements.

11

It said nothing at all about what impact state and local mask rules were having on interstate spread of the virus. Because it failed to "scrupulously follow" 42 CFR § 70.2, the Mask Order must be overturned. *Sierra Club*, 168 F.3d at 4.

### B. The Order Is Not Reasonable or Reasonably Explained.

Defendants argue that "increases in cases do not disprove the utility of masks," as cases might have been higher in their absence. Reply at 16. This rank speculation misapprehends Plaintiffs' argument, which is that the CDC's own data shows no evidence that the Mask Order did anything to affect the *interstate spread* of COVID. ECF 48 at 27-28; ECF 48-1.

The CDC argues that its "line-drawing decisions as to the contours of 'sanitation' measures are for the agency to decide." Reply at 16. But an agency is still "required to identify the standard and explain its relationship to the underlying regulatory concerns." *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013). Defendants' failure begins with its reliance on the word "sanitation," and extends through the CDC's sudden, unprecedented claim of authority over the lives of individuals, without articulating how the Mask Order was supposed to prevent the interstate spread of COVID. *See* ECF 48 at 26-29. Any rational person could have predicted that it would fail to do so.[6]

---

[6] A study on the effectiveness of other travel restrictions such as pre-departure testing and quarantine in the European Economic Area found that, at best, those restrictions delayed the peak of an Omicron outbreak in any given country by two to four days. *See*

12

Defendants appeal to this District's own mask rule as vindicating the reasonableness of the Mask Order. Reply at 17. But in that order, the Chief Judge merely followed CDC guidance. *See* ECF 45-5. By contrast, his recent order vacating the District's mask requirement omits any reference to the CDC.[7]

Defendants argue that the CDC's weighing of scientific evidence was appropriate. But Defendants fail to address the fact that, among the agency's cherry-picked data, the Arizona schools study was widely panned as failing to provide any scientific insight into the effectiveness of masks. *See* ECF 48 at 39-40. Defendants also fail to address the fact that requiring millions of untrained laymen to don a medical device "may actually increase the risk of transmission." *Id*. at 40 & fn. 33.

Defendants claim that the CDC accounted for countervailing harms by exempting those who cannot wear a mask for medical reasons, as well as young children. Reply at 18. But this ignores the harms inherent to extended mask-wearing. ECF 48 at 40.[8] As well, the government has refused to recognize medical conditions such as anxiety. *See* Decl. of A. Daza, ECF 48-2, at ¶7. And the CDC has yet to justify the arbitrary cut-off age of two years.

---

https://www.iata.org/contentassets/31f976cb5de0427cbe4a85958857a472/oxera.pdf (last visited on March 30, 2022).

7      *See* Case No. 3:20-mc-23 at ECF 5.

8      Indeed, there is ample reason to believe that long-term mask-wearing is unhealthy. For one example, *see* https://news.llu.edu/health-wellness/experiencing-tender-gums-bad-breath-how-fight-mask-mouth (last viewed on March 28, 2022).

13

Defendants argue that the Mask Order "also allows a person 'experiencing difficulty breathing or shortness of breath' to remove a mask until they can breathe normally[.]" Reply at 18-19. But the Order provides no guidance to lay staff, who must enforce the order, on what this means.[9] Does it, for example, encompass panic attacks, or only a physical inability to breathe? How should staff discern the difference? Meanwhile, passengers must consider the threat of being accused of violating "Federal law" according to the whims of untrained, overstressed staff, and of being fined or placed on a no-fly list as a result. Daza Decl. at ¶¶9-10.

### IV. Plaintiffs' Nondelegation Argument Should Be Considered.

Without addressing the merits, Defendants argue that Plaintiffs' nondelegation claim is doomed by Supreme Court precedent. Reply at 19. But the fact that no majority of the Court has agreed on nondelegation since 1935 does not mean that it is a dead letter. Indeed, the plurality in *Gundy v. United States* considered the standard, but simply found that it did not apply in that case. 139 S. Ct. 2116 (2019). Thus, the question of whether the CDC has articulated an "intelligible principle to guide" its exercise of discretion, *id.* at 2123, should be considered by this Court.

---

[9] In a recent letter to the Biden Administration, airline CEOs pointed out that flight attendants are not trained to enforce mask rules. *See* https://www.cbsnews.com/news/covid-19-travel-airline-safe-to-fly-maskless/ (last visited on March 31, ,2022).

14

## V.     Plaintiffs Reserved The Right To Seek Injunctive Relief.

Citing Plaintiffs' Response to Defendants' Motion to Transfer, Defendants argue that Plaintiffs are "estopped from seeking an injunction." Resp. at 20. But Plaintiffs expressly "reserve[d] the right to seek injunctive relief," even though they had not, *at that time*, requested an injunction. ECF 26 at 10. Defendants can hardly claim that seeking an injunction would be "clearly inconsistent" with that. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Nor can Defendants claim that Plaintiffs misled the Court or that they would be prejudiced by a subsequent request for an injunction. *See id*. at 750-51.[10]

Plaintiffs have not yet requested an injunction because the remedy for a violation of the APA is for a court to "hold unlawful and set aside" the challenged "agency action." 5 U.S.C. § 706(2). An order granting this relief should, hopefully, obviate the need for an injunction.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion for Summary Judgment, and grant Plaintiffs' Cross-Motion for Summary Judgment.

Filed this 31st day of March, 2022.

                                          HADAWAY, PLLC
                                          2425 Lincoln Ave.
                                          Miami, FL 33133

---

[10]     The Court found the lack of a claim for injunctive relief at the pleading stage as one among several distinctions between this lawsuit and the *Wall* case. ECF 35 at 7-12.

15

Tel: (305) 389-0336

*/s/ Brant C. Hadaway*
Brant C. Hadaway, B.C.S.
Florida Bar No. 494690
Email: bhadaway@davillierlawgroup.com

and

George R. Wentz, Jr.
*Admitted Pro Hac Vice*
The Davillier Law Group, LLC
935 Gravier Street, Suite 1702
New Orleans, Louisiana 70112
Email: gwentz@davillierlawgroup.com
Tel: (504) 582-6998

*Attorneys for Plaintiffs*